### State of Vermont v. Michael Loveland

[684 A.2d 272]

No. 95-136

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed August 9, 1996

*Jeffrey L. Amestoy*, Attorney General, and *Susan R. Harritt*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Robert Appel*, Defender General, and *William A. Nelson*, Appellate Attorney, Montpelier, for Defendant-Appellant.

**Dooley, J.** Defendant appeals his conviction for sexual assault on a minor in violation of 13 V.S.A. § 3252(a)(3). He contends that the trial court: (1) committed plain error by instructing the jurors that he had stipulated to the facts that he was not married to the victim and that the victim was under the age of sixteen; and (2) impermissibly enhanced his sentence because he invoked his privilege against self-incrimination. We affirm the conviction, but reverse the court's sentence.

Defendant was charged with committing sexual assault on his minor stepdaughter. Defendant testified on his own behalf at trial, denying that the sexual assault ever occurred. The jury rendered a guilty verdict.

A presentence investigation was ordered, and the report showed that defendant, who was out on bail prior to his trial, had a good work history and had been employed at his current job for ten months. Except for a technical violation of the bail release conditions, he had complied with the conditions of release. At sentencing, although he informed his counsel that he was willing to undertake sex offender therapy as a condition of his probation, defendant continued to maintain his innocence. When the court asked defendant if he had anything to say, defendant replied, "No."

In determining defendant's sentence, the court found that he had no prior history of sexually abusing children, and that this fact would be a mitigating factor at sentencing. Nevertheless, the court concluded that defendant had committed "serious misconduct that deserves punishment," and that a period of incarceration was necessary to protect the public. The court then considered but rejected a proposed sentence that would include probation, concluding that defendant's refusal to acknowledge any responsibility for the crime would make it difficult for him to successfully complete the sexual offender treatment program. The court sentenced defendant to six to twelve years in prison, with no conditions of probation. Defendant appeals both the conviction and the sentence.

Defendant first argues that it was error for the court to direct the jury to consider two elements of the offense as proven: that (1) the victim was under the age of sixteen, and (2) defendant and the victim were not married. The issue arose at the charge conference, which was held in open court with defendant present. The court asked defendant's counsel whether he could "tell the jury that the elements that the other person was under the age of sixteen has been established, and the element that the other person, namely K.P., and

the defendant were not married, have been established?" Defendant's counsel replied, "Yes, that's fine, sir." Defendant registered no objection to this action.

Following the charge conference, the court instructed the jury as follows:

> The third element is that the defendant engaged in the sexual act with a person who was under the age of sixteen. Here, it's alleged that K.P. was under the age of sixteen, and the parties have stipulated that you may consider that — you may consider as established that she was under the age of sixteen and you should, therefore, consider that element has been proven. That is, that at the time alleged, K.P. was under the age of sixteen.

> The fourth element is one — is that the persons who engaged in the sexual act, that is the defendant and K.P. were not married to each other and, again, the parties have stipulated that is a fact and you should consider, therefore, that element has been established.

It is undisputed that the victim was six years old when the sexual assault occurred. Defendant also does not dispute the fact that he was not married to the victim, who in fact was his stepdaughter at the time. On appeal, the only claim is that the court committed error by depriving defendant of his right to a jury trial on all essential elements of the crime, without his express waiver of that right.

■ Defendant has framed his claim as one of an invalid jury trial waiver in order to avoid the consequences of nonpreservation. In a series of cases, we have allowed defendants to attack the validity of jury trial waivers in this Court without any preservation below. See, e.g., *State v. West*, 164 Vt. 192, 199-202, 667 A.2d 540, 544-48 (1995); *State v. Coita*, 153 Vt. 18, 21, 568 A.2d 424, 426 (1989). All of these cases, however, involve waiver of a jury trial on all issues in favor of a bench trial. Defendant argues that stipulation to the presence of an element of the offense is a waiver of jury trial on that element, and that waiver as to an element of the offense must be treated the same as a waiver with respect to all elements. To reach this conclusion, he relies mainly on the reasoning of this Court in *State v. Machia*, 155 Vt. 192, 583 A.2d 556 (1990), where we concluded that consent to an eleven-person jury did not have to meet the procedural requirements of a jury trial waiver. *Id.* at 195-96, 583 A.2d at 558.

*Machia* is of little help to defendant's position. We summarized the reasoning as follows:

> [W]e believe that the decision to stipulate to an eleven-person jury is a "tactical" or "strategic" one that can be made by counsel with the defendant's implied consent. Here, defense counsel's on-the-record oral stipulation to an eleven-member jury, confirmed in defendant's presence, did not deprive defendant of his constitutional right to trial by jury.

*Id.* at 199, 583 A.2d at 560. Nothing in the opinion suggests that because a decision to stipulate to an eleven-person jury was a tactical decision, a decision not to contest an element of an offense is necessarily a waiver of trial by jury.

We thus decline to adopt defendant's position. All issues contested by defendant were determined by the jury, and it ultimately determined defendant's guilt or innocence. Moreover, acceptance of defendant's argument would put us on a very slippery slope where any defect in the jury's consideration would be considered a waiver of a jury trial, valid only if expressly agreed to by the defendant.

Even if we were inclined to accept defendant's argument that some kind of personal waiver by defendant is required, we would accept the kind of implied waiver we found effective in *Machia*, where defense counsel stipulated to an eleven-person jury on the record in the defendant's presence. The waiver involved is that of the right to participate in specific trial events, and not a waiver of the right to trial by jury. See *In re Cardinal*, 162 Vt. 418, 419, 649 A.2d 227, 229 (1994). We have no difficulty in finding a waiver on this record. The stipulation to the elements of the offense was given in open court with defendant present. To the extent defendant contested the stipulation, it was his obligation to speak at that time.

Alternatively, defendant argues that, despite the lack of preservation, the trial court's failure to charge the jury that it must determine whether the State has established the disputed elements was plain error that warrants reversal of his conviction. Defendant finds some support for his position in *State v. Camley*, 140 Vt. 483, 438 A.2d 1131 (1981), and *State v. Noyes*, 147 Vt. 426, 519 A.2d 1152 (1986). In *Camley*, defense counsel focused on whether defendant killed the victim in self-defense or in the heat of passion, and conceded the killing. As a result, the court failed to charge the jury that it could acquit the defendant of killing the victim, an omission the defendant raised as plain error on appeal. We found the error struck "at

fundamental rights" and reversed for a new trial. *Camley*, 140 Vt. at 490, 438 A.2d at 1135.

In *Noyes*, a DUI case, the court charged the jury that the defendant had admitted that he was operating a motor vehicle on a public highway at the time of the alleged offense. On appeal, the defendant claimed this charge was error despite his failure to object to the charge below. We held that the jury charge was plain error. *Noyes*, 147 Vt. at 429, 519 A.2d at 1154.

Since *Noyes* we have held that it is "bad policy to create a category of errors which are plain per se," *State v. Roy*, 151 Vt. 17, 23, 557 A.2d 884, 888 (1989), and applied this policy to other areas where, in the past, we have not required preservation. See also *State v. Davis*, 157 Vt. 506, 509, 601 A.2d 1381, 1383 (1991) (*Miranda* waiver); *State v. Holcomb*, 156 Vt. 251, 254, 590 A.2d 894, 895-96 (1991) (duplicity claim). We see no reason why we should adopt a different approach in this case, and we therefore decline to find plain error per se for concessions to elements of an offense. See *State v. Pelican*, 160 Vt. 536, 545, 632 A.2d 24, 29 (1993) (Morse, J., concurring).

Instead, in order to hold that there was plain error in this case, we must find that "the trial court's error [is] so grave and serious as to strike to the very heart of defendant's constitutional rights or adversely affect the fair administration of justice." *State v. Bradley*, 164 Vt. 346, 348, 670 A.2d 811, 813 (1995). Such errors occur "only in rare and extraordinary cases." *State v. Plante*, 164 Vt. 350, 356, 668 A.2d 674, 678 (1995). A key factor in the plain error analysis is whether defendant was prejudiced. See *State v. Weeks*, 160 Vt. 393, 400, 628 A.2d 1262, 1266 (1993).

There is no conceivable prejudice to defendant from the asserted error. The conceded elements were incontestable; there is no substantial chance the jury would have found the elements had not been proven. Moreover, insisting that the jury should determine whether or not defendant was not married to the victim and whether the victim was under sixteen years of age would probably have hurt his case. By conceding these elements, defendant appeared to be reasonable to the judge and jury. There is no plain error.

Next, defendant argues that the court enhanced his sentence for his failure to admit his guilt at sentencing, and that this action violated his privilege against self-incrimination, because any statement he made could be used against him in a retrial or in a separate perjury prosecution. We have explored the issues relating to these claims in two recent decisions, *State v. Noyes*, 157 Vt. 114, 596 A.2d

340 (1991), and *State v. Sims*, 158 Vt. 173, 608 A.2d 1149 (1991). The claims in *Noyes* were virtually identical to those made here. The defendant, who testified at trial, argued he was on "the horns of a dilemma: if he did not admit guilt, he could be punished for lack of remorse; if he admitted guilt, he could urge the court to give him a lighter sentence but his confession might be used against him at retrial if he prevailed on appeal." 157 Vt. at 118, 596 A.2d at 342. Relying on *United States v. Grayson*, 438 U.S. 41 (1978), we held that the trial court could consider the defendant's "testimony and demeanor at trial" in fashioning a sentence. *Noyes*, 157 Vt. at 119, 596 A.2d at 342. The defendant's truthfulness or mendacity, while testifying at trial, is "'probative of his attitudes toward society and prospects for rehabilitation and hence relevant to sentencing.'" *Id.* at 119, 596 A.2d at 343 (quoting *Grayson*, 438 U.S. at 50).

In *Sims*, the defendant argued that consideration at sentencing of his continuing denial that he committed the offense penalized invocation of his privilege against self-incrimination. Relying on *Noyes*, we reasoned:

> A defendant's acceptance of responsibility for the offense, and a sincere demonstration of remorse, are proper considerations in sentencing. They constitute important steps toward rehabilitation. Where they are present, a reduction in sentence can be appropriate. Likewise, denying this reduction, where there are no acknowledgements, can be appropriate and does not penalize a defendant's privilege against self-incrimination. We "'are unprepared to equate the possibility of leniency with impermissible punishment.'" *United States v. Parker*, 903 F.2d 91, 105 (2d. Cir. 1990) (quoting *United States v. Henry*, 883 F.2d 1010, 1011 (11th Cir. 1989) (per curiam)).

*Sims*, 158 Vt. at 188-89, 608 A.2d at 1158. Based on the record, we held that the defendant had demonstrated only that he was denied a sentence reduction, and therefore, there was no violation of his privilege against self-incrimination. *Id.*

This case fits squarely within the rationale of *Sims*. In its sentencing decision, the trial court emphasized that, even though this was defendant's first offense, defendant had sexually abused a young child with whom he assumed a "position of trust," and that his conduct deserved punishment. The court further emphasized the need to protect the public from untreated child sexual abusers who pose a

high risk of recidivism. It noted, however, that successful rehabilitation of convicted sexual offenders requires that they admit to having committed the abuse, and be willing to take responsibility for their acts. Otherwise, a sexual offender unwilling to acknowledge any responsibility for his crime cannot successfully be treated, and will still pose a threat to society. The court concluded:

> This is not a case where we would impose a sentence that would allow the defendant to complete a so-called pretreatment program in an incarcerative sentence and then an outpatient intensive, longer sexual abuse treatment program as in a probationary status, because I don't think there is any likelihood that program would be completed.
>
> So, based on the need to protect the public, [and based on the] knowledge that if an inpatient sexual offender program is successfully completed, that the risk to society would be diminished; and based further on [the knowledge] that if such a program were not completed, then a longer term of incarceration would be needed, again to meet the needs of protection of the public, we are going to impose a sentence on the sexual assault charge that the defendant be committed to the custody of the Commissioner of Corrections for a period of not less than 6, nor more than 12 years.

As in *Sims*, defendant's continuing denial that he committed the offense was considered as bearing on his prospects for rehabilitation. It was also considered as bearing on the protection of the public because it would prevent effective treatment. There is no indication that the court did anything other than deny defendant a reduction of sentence that might accompany a showing of remorse and dedication to treatment and rehabilitation. There is no evidence that the court punished defendant for relying on his privilege against self-incrimination.

Defendant urges us to abandon the *Sims* analysis because it is unworkable in a discretionary sentencing system where it is impossible to distinguish between a sentence enhancement and the denial of a sentence reduction. We acknowledge the difficulty in drawing lines, but find that difficulty similar to what we encounter in CHINS cases, where we have also balanced the competing interests of safety of the juvenile and the parents' privilege against self-incrimination. In *In re M.C.P.*, 153 Vt. 275, 298-301, 571 A.2d 627, 639-41 (1989), at a CHINS merits determination, the court found that the parents had sexually

and physically abused their child. The parents contended that it was improper for the state to refuse to reunify the child with the parents on the basis of their failure to admit to the abuse. We acknowledged the dilemma raised by the competing pressures to protect the child from further abusive actions and to honor the parents' privilege against self-incrimination. We balanced the considerations as follows:

> The trial court cannot specifically require the parents to admit criminal misconduct in order to reunite the family. On the other hand, the parents must demonstrate to the court that it is in the juvenile's best interest to return custody to the parents in the face of the serious misconduct the court found they engaged in. While the court may not specify that the only route to reunification is an abandonment of the self-incrimination right, the parents must expect that the court and SRS will act based on the findings of extreme parental abuse. If the parents can find a way to show that they have become good parents, without admitting to any misconduct, and that a restoration of custody of the juvenile to them is in the best interest of the child and is safe, the court may not foreclose the option.

*Id.* at 300-01, 571 A.2d at 641.

The trial court here was faced with a dilemma like that in *M.C.P.* Defendant is an untreated sexual offender, who, without effective treatment, presents a substantial risk of reoffending. While the court cannot punish defendant for insisting on his privilege against self-incrimination, it also cannot ignore the apparent consequences of defendant's condition. If defendant can find a method of convincing the court that community safety can be assured with a probationary sentence, the court must be open to that possibility. Where he presents no realistic alternative, beyond an illusory commitment to participate in treatment programs as directed, the court is free to consider the prospect of rehabilitation, and the safety of the community, in fashioning the sentence.

Finally, defendant argues that even if the sentence is not unlawful, we should adopt an alternative method of solving the dilemma faced by defendant by granting him use immunity. See S. Solkoff, *Judicial Use Immunity and the Privilege Against Self-Incrimination in Court Mandated Therapy Programs*, 17 Nova L. Rev. 1441, 1485-87 (1993) (judicial use immunity is "attractive" solution, "amenable to the realm of court-ordered therapy," to protect interests involved).

■ The model for defendant's solution is the exclusionary rule we crafted in *State v. Begins*, 147 Vt. 295, 514 A.2d 719 (1986), where a probationer was charged with misconduct that forms the ground for both revocation of probation and an independent criminal charge. We found that if the revocation hearing proceeds before the criminal trial, the defendant faces a hard testimonial choice of refusing to testify in the hearing or testifying, with the consequence that the testimony can be used in the criminal trial. In order to "insure that the administration of justice in Vermont operates as fairly as possible," we held that "the probationer's testimony will be subject to an exclusionary rule which will enable her to testify at the revocation hearing without fear of subsequent self-incrimination at the criminal trial." *Id.* at 298-99, 514 A.2d at 722. The rule does not prevent the use of the testimony, or its fruits, to impeach or rebut inconsistent testimony or as a basis for a perjury prosecution. *Id.* at 300, 514 A.2d at 723.

In *State v. Drake*, 150 Vt. 235, 552 A.2d 780 (1988), we applied the *Begins* rationale to the admission, at a sentencing hearing, of evidence of other crimes for which the defendant had not been charged, holding that such evidence could be considered only if the defendant were offered immunity against the use of his statements in relation to those crimes in other proceedings. *Id.* at 237, 552 A.2d at 781.

We have recently adopted a *Begins* exclusionary remedy in related circumstances in *State v. Cate*, 165 Vt. 404, 683 A.2d 1010 (1996). In *Cate*, the defendant's sentence placed him on probation, but specifically required as a condition of probation that defendant admit his culpability for the offense. Because the defendant testified at trial, he argued that the condition would require him to confess to perjury, in violation of his privilege against self-incrimination. We agreed, holding that a defendant could not be forced to incriminate himself by admitting criminal responsibility as a condition of probation without first receiving immunity from criminal prosecution as a result from the admission. *Id.* at 415, 683 A.2d at 1018. To make the holding effective, we further held that if the prosecutor would not eliminate the risk of future prosecution derived from statements required for successful completion of rehabilitative probation, judicial use immunity would make such statements inadmissible against the probationer at a subsequent criminal trial. *Id.* at 417, 683 A.2d at 1019. Moreover, the sentencing court must advise the defendant of the rule. *Id.*

*Cate* dealt with a very narrow situation, where the court explicitly conditions probation on an acknowledgement of criminal responsibil-

ity. We emphasized that we did not want to discourage such probation conditions because they clearly warn the defendant of the inevitable obligation imposed by the probation conditions, and avoid a high likelihood of misunderstanding that results when a defendant accepts probation but refuses to acknowledge responsibility for the offense. See *id.* at 417, 683 A.2d at 1019-20.

Nevertheless, we are concerned that if we do not apply the *Cate* rule at sentencing, we will not fully eliminate the dilemma facing defendants. Otherwise, defendants may decline to admit responsibility in order to preserve their privilege against self-incrimination. Nor will we provide for the fair administration of justice if, in attempts to avoid the grant of judicial use immunity, sentencing courts simply avoid granting probation, or craft vague sentences and probation conditions which fail to clearly explain the obligation of defendants to admit criminal responsibility in a sexual offender treatment program. As a result, courts will not consider the full range of sentencing options, thereby distorting the sentencing process. Moreover, we want to fashion a rule that encourages convicted defendants to accept treatment and rehabilitation, rather than emerging untreated from incarceration, however far in the future.

Accordingly, we adopt the *Begins* exclusionary rule for statements made by sex offenders,* convicted after a trial, during their sentencing. Such "statements required for successful completion of probation, and their fruits, will not be admissible against him or her at any subsequent criminal proceeding," *Cate*, 165 Vt. at 417-18, 683 A.2d at 1019, nor at a retrial of the offense on which defendant is being sentenced, except under the conditions stated in *Begins.*

Because defendant made no statement at his sentencing hearing and may have "been deterred from doing so by the desire to preserve [his] privilege against self-incrimination," *Begins*, 147 Vt. at 300, 514 A.2d at 723, we reverse the sentence and remand for imposition of a new sentence consistent with this opinion.

*Defendant's conviction is affirmed. The sentence is reversed and remanded for resentencing in light of this opinion.*

---

* We have limited this ruling to sex offenders because we are convinced that the "hard testimonial choice" is present in such circumstances. We leave to another day whether such a choice is present in other circumstances.