## State of Vermont v. James H. Lund

[718 A.2d 413]

No. 96-056

Present: Amestoy, C.J., Dooley, Morse and Johnson, JJ., and Allen, C.J. (Ret.), Specially Assigned

Opinion Filed January 16, 1998

Motion for Reargument Denied February 18, 1998

Motion to Vacate Denied June 15, 1998

*Jan R. Paul,* Essex County State's Attorney, St. Johnsbury, for Plaintiff-Appellee.

*Charles S. Martin* of *Martin & Associates,* Barre, *and James H. Lund,* pro se, Bradford, Pennsylvania, for Defendant-Appellant.

**Johnson, J.** Defendant appeals his conviction and sentence for having sexually assaulted his stepdaughter. He claims that (1) the trial court abused its discretion by denying his motion for a continuance on the eve of trial; (2) his trial counsel's ineffectiveness prejudiced his defense and thus requires reversal of his conviction; (3) the court erred in denying his request to have an unnoticed witness testify to impeach the victim's testimony; (4) the court erred in refusing to grant a mistrial when a State's witness testified that defendant had refused, upon advice of counsel, to give police a statement; and (5) the court erred in enhancing his sentence based on his lack of remorse without first offering him immunity from further prosecution in the event he prevailed on appeal and obtained a new trial. Defendant also contends in a supplemental pro se brief that (1) the trial court's failure to ensure that he was returned to Vermont to allow adequate time to prepare a defense with his new counsel violated his right to a fair trial; (2) the court's failure to conduct an inquiry into defendant's pretrial request to dismiss his new attorney was reversible error; and (3) the State misrepresented relevant facts to the court and withheld exculpatory evidence, resulting in unfavorable and prejudicial evidentiary rulings. We affirm without addressing defendant's ineffective-assistance-of-counsel claims.

In November 1994, the court assigned defendant a public defender after the State filed an information charging him with sexual assault on a minor. Shortly thereafter, defendant was incarcerated in a federal prison in Pennsylvania on federal firearms charges. For the most part, the sexual assault case remained dormant until July 1995,

when defendant himself filed a formal request asking that he be tried within 180 days or that his case be dismissed under the Interstate Agreement on Detainers Act. In August 1995, defense counsel filed a motion to dismiss for lack of a speedy trial. The court denied the motion to dismiss, but set the matter to be tried within 180 days. Eventually, the trial was set to begin on December 5, 1995. In October 1995, defendant sought appointment of new counsel, and his attorney filed a motion to withdraw. On November 7, the court granted the public defender's motion to withdraw and assigned a new attorney for defendant. On December 5, the day the jury draw began, defendant's new attorney sought a one-week continuance for further trial preparation. The court denied the motion, and the trial began the next day. Following a two-day trial, the jury found defendant guilty of sexual assault on a minor.

## I.

### A.

■   To the extent that defendant is arguing that he was entitled to a continuance because he had his first face-to-face meeting with his new attorney only the day before the trial began, we find no error in the court's decision to deny the continuance. Substitute counsel had nearly five weeks to prepare for a relatively uncomplicated trial that would hinge on whether the jury believed defendant or his stepdaughter. Indeed, at the hearing on the first public defender's motion to withdraw, the public defender assured the court that the case was a simple and straightforward credibility contest between defendant and his stepdaughter, and that new counsel could prepare an adequate defense in the month remaining before trial. In response to the prosecutor's concern that defendant was manipulating the system by demanding a speedy trial and then firing his attorneys, the court ordered that the new counsel be assigned and begin work on the case immediately. The new attorney made no request for an extension of time until the day of the jury draw, and even then he made no specific showing of what he needed to do in the ensuing week to assure that he could prepare an adequate defense. Further, defendant has not contended that telephone or facsimile communication was unavailable during the month before his trial began,* that face-to-face contact

---

* In his pro se brief, defendant cites a colloquy at a December 1994 status conference to demonstrate that the trial court was aware that federal prisoners are limited to

between him and his attorney was necessary for preparation of his defense, or that such contact was impossible, if necessary. Given these facts and circumstances, and the last-minute timing of the request, we cannot conclude that the trial court's decision to deny the motion to continue was a clear abuse of discretion requiring reversal. See *State v. Hanlon*, 164 Vt. 125, 128, 665 A.2d 603, 605 (1995) (Supreme Court will not interfere with trial court's ruling on motion to continue if there is any reasonable basis to support it).

## B.

At the heart of both of defendant's briefs is his claim that he received ineffective assistance of counsel. Because the record is insufficient for this Court to assess whether his trial counsel adequately defended him, this claim must be raised, if at all, in the context of a petition for post-conviction relief. See *State v. Judkins*, 161 Vt. 593, 594-95, 641 A.2d 350, 352 (1993) (mem.) (generally, question of ineffective assistance of counsel is limited to petitions for post-conviction relief; unless question of ineffective representation is raised at trial and ruled on by trial court, there is no record on which Supreme Court can determine if trial judge erred in weighing competence of counsel in context of specific errors asserted).

In his pro se supplemental brief, defendant suggests that the trial court had an opportunity to review his counsel's effectiveness, but failed to do so. According to defendant, because he sought to fire his second attorney during jury selection the day before trial, the trial court was required to make an inquiry regarding his attorney's effectiveness when he attempted to fire him the day of the jury draw. We disagree. On the morning of the jury draw, when defendant learned that his trial counsel had failed to provide the prosecutor with a witness list, he blurted out that he wanted to fire the attorney. The court would not tolerate defendant's interruptions because he was represented by counsel. In the end, however, the court allowed defense counsel to present all but one of the witnesses he wanted to call. Thus, defendant's last-minute attempt to fire his new attorney

---

fifteen-minute telephone calls. The court's brief and informal acknowledgement of restrictions on telephone calls to federal prisoners does not demonstrate that defendant's new attorney was unable to prepare an adequate defense. Even assuming that the fifteen-minute limit exists and is strictly enforced without exceptions, there is no indication as to the number of telephone calls allowed or whether the limitations on telephone contact or other means of communication made it impossible for defense counsel to prepare the case.

did not give the trial court an opportunity to determine whether the attorney would be able to present an effective defense. See *State v. Ahearn*, 137 Vt. 253, 264, 403 A.2d 696, 703 (1979) ("defendant's assertions of insufficient preparation . . . do not serve as evidence of the facts as he claims them to be"). Indeed, defendant acknowledges in his brief that trial counsel's ineffectiveness became evident *as the trial unfolded.* Because we have no record from which to judge defendant's claims of ineffective-assistance-of-counsel, we will not consider them on direct appeal from the proceeding in which the assistance was allegedly ineffective. See *In re Moskaluk*, 156 Vt. 294, 298, 591 A.2d 95, 97 (1991); cf. *State v. Bacon*, 163 Vt. 279, 296-97, 658 A.2d 54, 66 (1995) (ineffective-assistance-of-counsel claims may be addressed on direct appeal if claim was raised and adjudicated at trial).

## II.

Defendant also argues that the trial court erred in denying his motion to present the testimony of a sheriff who had interviewed the victim, and that the prosecutor improperly took advantage of the excluded testimony in closing argument. These arguments are based on the following facts. In late October 1994, when defendant's stepdaughter reported that defendant had sexually assaulted her, she also informed state officials that both her mother and father had physically abused her and her two younger sisters. In an effort to attack the stepdaughter's credibility, defendant called to the stand a doctor who testified that he had found no evidence of physical abuse after examining the younger girls on November 2, 1994 at the request of the Department of Social and Rehabilitation Services. Defense counsel also elicited testimony during cross-examination of the step-daughter that defendant had kicked one of the younger sisters into a wall in July 1994. During the second day of trial, defense counsel informed the court that he had just learned that in November 1994 the stepdaughter told the investigating sheriff that defendant had kicked her little sister into a wall only a few days earlier, on October 29, 1994, not back in July as she had testified at trial. Apparently, the stepdaughter's statement was recorded in the sheriff's affidavit. Defense counsel wanted to have the sheriff testify to undercut the stepdaughter's credibility. According to defense counsel, the sheriff's testimony would suggest that the stepdaughter had changed her story as to when the kicking incident occurred to lessen the impact of the doctor's testimony that he had found no evidence of physical

abuse on November 2, 1994. This would further suggest that if the stepdaughter had lied about defendant physically abusing her sisters, she probably also lied about defendant sexually abusing her. Noting that defense counsel had failed (1) to notify the State of its intention to call the sheriff even though counsel had access to the sheriff's affidavit before trial, see V.R.Cr.P. 16.1(c), and (2) to confront the stepdaughter with the prior inconsistent statement during his cross-examination of her, see V.R.E. 613(b) (extrinsic evidence of prior inconsistent statement is not admissible unless witness is afforded opportunity to explain or deny statement), the court concluded that allowing the sheriff to testify at that point in the trial would subvert the fair administration of justice and the truth-seeking function of the trial.

Defendant's claims of error are unpersuasive because they exaggerate the probative value of the excluded testimony. The stepdaughter testified that she was uncertain as to what she told investigating officers regarding the kicking incident. She was certain only that defendant had kicked her little sister in the "rear end," causing the "front side" of her to hit the wall. She stated that she had no idea whether the child had been bruised as the result of the incident. Assuming the jury would have accepted the sheriff's testimony that the stepdaughter told him the younger girl had been kicked in October rather than July of 1994, the evidence would not have shown that the stepdaughter had lied about the physical abuse of her sister, let alone the sexual abuse upon which the trial was based. Nothing in the stepdaughter's testimony suggested that the kicking incident would have necessarily left a bruise on the child. The proffered evidence was not so probative that the court was required to admit it notwithstanding defendant's failure to notify the State of the sheriff's testimony and confront the victim with it. See *State v. Passino*, 161 Vt. 515, 521-22, 640 A.2d 547, 550 (1994) (trial court's discovery sanctions, including exclusion of evidence, will not be disturbed absent clear abuse of discretion; in assessing propriety of exclusion sanction, defendant's right to offer testimony is weighed against interest in fair and efficient administration of justice and potential prejudice to truth-seeking function). Further, the prosecutor acted properly in making her closing argument based on the evidence admitted at trial, and defendant made no objection at that time. See *State v. Cohen*, 157 Vt. 654, 655, 599 A.2d 330, 331 (1991) (mem.) (when alleged error consists of improper closing argument, plain error will

be found only if argument was so egregious that its prejudicial effect is obvious and affirmance would result in miscarriage of justice).

Defendant also argues that even if we reject his argument that the court erred by excluding the sheriff's testimony, defense counsel's ineffectiveness in failing to notify the State and use the sheriff's testimony to impeach the stepdaughter's testimony requires reversal of his conviction. To the extent that this argument has any merit in light of our conclusion that the excluded testimony lacked probative value, the argument must be raised, if at all, in a PCR proceeding. Finally, the record does not support defendant's accusations in his pro se brief that the State intentionally misstated facts regarding the custody status of the stepdaughter's younger sisters and withheld exculpatory evidence regarding the stepdaughter's statement to the sheriff and the doctor's physical examination of the younger sisters. All of this information was available to the defense.

## III.

Next, defendant argues that the trial court erred in refusing to grant a mistrial when a State's witness testified that defendant had refused to speak to him upon advice of counsel. During direct examination of a police officer investigating the stepdaughter's complaint, the prosecutor asked the officer what happened when defendant arrived at the police barracks. The officer responded: "He told me he had talked to a lawyer and he wasn't going to give me a statement." Defense counsel immediately requested a mistrial. The trial court denied the request, but sustained defense counsel's objection to the answer and told the jury to disregard the answer and consider it no further.

Again, we find no abuse of discretion. See *State v. Jones*, 160 Vt. 440, 449, 631 A.2d 840, 847 (1993) (trial court has discretion in ruling on motion for mistrial, but should not grant motion unless moving party establishes prejudice). The officer's testimony was elicited as part of an on-going statement of the events that transpired at the time the complaint was made, and was not intended as evidence of defendant's silence. See *State v. McCarty*, 401 S.E.2d 457, 461 (W. Va. 1990) (officer's comment on direct examination that defendant stated he would rather talk to attorney was made in context of relating events that transpired on night of murder and was not intended as reference to defendant's silence). Given this fact, the brevity of the response, and the trial court's immediate curative instruction, the statement did not compel a mistrial.

## IV.

Lastly, defendant argues that under *State v. Loveland*, 165 Vt. 418, 427, 684 A.2d 272, 278 (1996) (defendants convicted of sex offenses must be offered immunity against use of statements made at sentencing concerning crimes for which they were convicted), the trial court was required to offer him use immunity before enhancing his sentence for lack of remorse. According to defendant, absent use immunity, he faced the impossible dilemma of either maintaining his innocence in the hopes of a favorable decision on appeal and a new trial, or admitting his guilt and showing remorse, thereby taking the chance that his sentencing statements would be used against him should he obtain a new trial.

■ Defendant's argument is unpersuasive in light of what transpired at the sentencing hearing. Addressing defendant directly, the court offered defendant use immunity in the event he wished to speak to evidence of other crimes alluded to in the presentence investigation report. Defendant responded: "I need no immunity for anything but I — I would like to address the issues." The defendant then presented a detailed monologue in which he vigorously attacked the evidence against him and proclaimed his innocence. During the monologue, he acknowledged that he could get off a lot easier by accepting responsibility for the sexual assault of his stepdaughter, but he refused to admit to a crime that he did not commit. Thus, defendant made it absolutely clear that he would not accept any offer of use immunity for any purpose, and that he would not be deterred from proclaiming his innocence. Given these circumstances, the sentencing court's failure to anticipate our holding in *Loveland* and offer defendant use immunity for statements he chose to make concerning the crime for which he was convicted was not reversible error. Cf. *id.* at 427, 684 A.2d at 279 (because defendant made no statement at his sentencing hearing and may have been deterred from doing so by desire to preserve his privilege against self-incrimination, sentence must be reversed).

*Affirmed.*

## On Motion for Reargument

On motion to reargue, defendant contends that this Court overlooked the failure of the trial court to conduct an adequate pretrial inquiry regarding his request to fire his attorney. See *United States*

*v. Zillges*, 978 F.2d 369, 372 (7th Cir. 1992) (on motion for substitute counsel, court must engage in some inquiry as to reasons for defendant's dissatisfaction with attorney); *United States v. Torres-Rodriguez*, 930 F.2d 1375, 1380 (9th Cir. 1991) (request for substitute counsel on morning of trial requires inquiry into defendant's complaint). Although briefly addressed in our opinion, we explain in more detail here that we do not reach this issue.

On the morning of the jury draw, the day before trial, the State objected to defendant presenting any witnesses because defense counsel had failed to provide the State with a list of witnesses. Defendant blurted out that he was not trying to delay the trial, that he had fired a previous attorney for failing to properly represent him and that he wanted to fire his attorney because he had done nothing. Between each statement, the court told defendant that he was represented by counsel and should not be speaking out in court. The court asked to hear from the attorney, and the issue of the late witness list was then addressed. At defendant's request, defense counsel then moved for a continuance to better prepare for the trial as counsel had first met with defendant the day before. The court denied the request for a continuance.

Defendant's request to fire his attorney was never ruled on by the court and was never renewed orally or in writing. Where the defendant has failed to pursue a ruling before the trial court, he has waived the motion and any right to review. *Harmony v. State*, 594 A.2d 1182 (Md. Ct. Spec. App. 1991) (offhand remark is insufficient to raise issue; court must decide issue to preserve for appeal); see also *State v. Hodge*, 882 P.2d 1, 9 (N.M. 1994) (one preserves issue for appeal by invoking ruling from trial court). In all other respects, the motion to reargue is denied.

## On Motion to Vacate

Defendant moves to vacate this Court's decision that issued January 16, 1998, on the ground that Chief Justice Amestoy participated in that decision. Following the decision, defendant moved to disqualify the Chief Justice, who recused himself in response to the motion on February 13. Defendant's motion to reargue was denied by the four other justices. Defendant now maintains that the original decision must be vacated. We deny the motion.

The issue is whether a unanimous decision of the Court must be vacated where one of the participating justices later recuses himself. The vast majority of authority indicates that a decision need

not be vacated where the disqualified judge's vote was mere surplusage. See, e.g., *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 827 (1986) ("Some courts have concluded that a decision need not be vacated where a disqualified judge's vote is mere surplusage."); *Harris v. Champion*, 15 F.3d 1538, 1571 (10th Cir. 1994) (considering that decision was made unanimously by three-judge panel in deciding it was not necessary to vacate decision where one judge was later found disqualified); *Hodosh v. Block Drug Co.*, 790 F.2d 880 (Fed. Cir. 1986) (disqualification of one judge would not have provided basis for vacating unanimous decision of panel); *Maier v. Orr*, 758 F.2d 1578, 1583 (Fed. Cir. 1985) (same); *Caples v. Taliaferro*, 200 So. 378, 382 (Fla. 1941) (disqualification of justice who had overlooked fact that he had participated in case as Attorney General of Florida did not require vacating decision that was three to two by qualified justices); *State v. Kositzky*, 166 N.W. 534, 535 (N.D. 1918) (participation of judge disqualified to act did not require invalidating proceeding where vote was five to zero, so his vote did not determine the result); *Goodheart v. Casey*, 565 A.2d 757, 761 (Pa. 1989) (judgment need not be disturbed where participating "interested" judges' votes were mere surplusage).

We join these courts and deny defendant's motion to vacate our decision.

**Dooley, J.,** concurring. This Court is a deliberative body, and decisions often emerge from group interaction and decisionmaking. Thus, I am unwilling to endorse a blanket rule that if enough nondisqualified justices voted for a particular result, it will always stand despite the involvement of one or more disqualified justices in the deliberative process. Nor am I willing to endorse the rule advocated by defendant — that involvement of a disqualified justice in deliberation automatically taints the deliberation so the case must be submitted to a whole new panel of specially-assigned justices. In this case, I believe, based on my involvement in the case from its initial argument, that the participation of the Chief Justice did not affect the result. Defendant has made no showing to the contrary. Accordingly, I join in the decision to deny the motion to vacate.

*Motion to vacate denied.*