2007 VT 49

# State of Vermont v. Harold Haner, Sr.

[928 A.2d 518]

No. 05-272

Present: Reiber, C.J., Dooley, Johnson and Skoglund, JJ., and Davenport, Supr. J., Specially Assigned

Opinion Filed June 1, 2007

*William H. Sorrell*, Attorney General, and *David Tartter*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Allison N. Fulcher* of *Martin & Associates*, Barre, for Defendant-Appellant.

¶ 1. **Johnson, J.** Defendant Harold Haner, Sr. appeals the district court's denial of his motion for a new trial. He claims that the district court erred by: (1) refusing to grant use immunity to his brother who had previously made exculpatory statements, and (2) ruling that several proffered documents containing confessions by his brother were inadmissible hearsay. We affirm.

¶ 2. In October 2000, defendant was convicted of aggravated sexual assault on his daughter, A.H. We affirmed the conviction in November 2001. In late February 2002, defendant's brother, who was seventeen at the time, went with their mother to the state police and confessed to the crime for which defendant had been convicted — sexually assaulting A.H. in March 1999. Defendant's brother then proceeded to write twenty-three letters to various parties, including defendant, expressing his guilt.

¶ 3. In June 2002, defendant filed a motion for a new trial based on newly discovered evidence, attaching a sworn affidavit by his brother that included a confession to the sexual assault. An evidentiary hearing on the motion was held on July 30, 2003. At the hearing, defendant's brother testified that he had come to court to confess to a crime that he had committed. He further testified that he had waited so long to come forward because he did not believe his brother could be convicted of a crime he did not commit, and that he had only written a note to their mother confessing to the sexual assault when he feared defendant would go to jail. When defendant's brother was asked to provide details about the sexual assault, the court cautioned him against self-incrimination and asked if he wished to speak to an attorney before proceeding. He replied in the affirmative. An attorney was provided to him, and from that point forward he refused to answer questions, invoking his Fifth Amendment right against self-incrimination.

¶ 4. Defendant subsequently filed a motion requesting that the court "use its inherent power to grant use immunity to [his brother] and thus require[] him to testify in the pending motion for a new trial." The court denied the motion in September 2003. The hearing on the motion for a new trial reconvened in March 2005. Defendant's brother again testified that he had previously confessed to sexually assaulting A.H.; however, he invoked the Fifth Amendment when asked whether he had actually committed the offense. In support of his motion for a new trial, defendant proffered several sources containing confessions by his brother: statements to the state police; letters written to defendant, A.H., and others; an affidavit; and deposition and hearing testimony predating his invocation of the privilege against self-incrimination. At the court's request, the parties filed memoranda addressing admissibility of the proffered evidence under the statement-against-penal-interest exception to the hearsay rule. V.R.E. 804(b)(3). The court deemed the confessions hearsay, and consequently denied defendant's motion for a new trial. This appeal followed.

¶ 5. Defendant's underlying claim on appeal is that the trial court erred in denying his motion for a new trial pursuant to Vermont Rule of Criminal Procedure 33. He bases this claim of error on two specific actions of the court: (1) its refusal to grant use immunity to his brother, and (2) its exclusion of his brother's confessions as inadmissible hearsay. For a new trial to be granted under Rule 33, the evidence must be such that it "would probably change the result upon retrial." *State v. Palmer*, 169 Vt. 639, 640, 740 A.2d 356, 359 (1999) (mem.) (quotation omitted). The ultimate decision to grant or deny a Rule 33 motion based on newly discovered evidence is left to the sound discretion of the trial court, and we will reverse only if the court abused that discretion. *Irving v. Agency of Transp.*, 172 Vt. 527, 528, 768 A.2d 1286, 1289 (2001) (mem.).

I.

¶ 6. Defendant first claims that the court erred when it failed "to exercise its inherent power to compel [his brother's] testimony through the grant of use immunity." He argues that our case law supports the judicial authority to grant defense witnesses immunity under circumstances similar to his case. To the extent that Vermont law does not explicitly support his argument for

judicial use immunity, he nonetheless claims that defense witness immunity was warranted here to protect his constitutional right, as a criminal defendant, to compel witness testimony in his favor. He urges us to adopt the Third Circuit's holding in *Government of Virgin Islands v. Smith* that courts have " 'inherent authority to effectuate the defendant's compulsory process right by conferring a judicially fashioned immunity' " upon witnesses whose testimony is exculpatory and essential to an effective defense. 615 F.2d 964, 969 (3d Cir. 1980) (quoting *United States v. Herman*, 589 F.2d 1191, 1204 (3d Cir. 1978), *cert. denied*, 441 U.S. 913 (1979)).

■ ¶ 7. In Vermont, the power to grant witness immunity lies exclusively within the discretion of the prosecutor, and the State is under no constitutional obligation to confer such immunity. *State v. Roberts*, 154 Vt. 59, 67, 574 A.2d 1248, 1251 (1990); 12 V.S.A. § 1664 (establishing that court may issue order granting immunity to witness despite invocation of Fifth Amendment privilege upon request by Attorney General or state's attorney). While we have recognized exceptions to this statutory rule, they are few and limited in scope so as not to disrupt the separation of powers inherent in the Legislature's exclusive grant of authority to the Attorney General and state's attorneys. 12 V.S.A. § 1664; see also R. Schoenhaus, Annotation, *Right of Defendant in Criminal Proceeding to Have Immunity from Prosecution Granted to Defense Witness*, 4 A.L.R.4th 617, § 2 (1981) (discussing courts' reluctance to allow defendants to compel prosecutors to exercise their legislatively granted authority to afford witnesses use immunity).

■ ¶ 8. Defendant claims that his case is sufficiently analogous to two cases in which we recognized an exception to the State's discretion under 12 V.S.A. § 1664 to necessitate court-ordered immunity for his brother. In *State v. Begins*, we were concerned by the State's practice of scheduling probation revocation hearings prior to the criminal trial on the underlying offense because of its potential to coerce self-incrimination by probationers. 147 Vt. 295, 297-98, 514 A.2d 719, 721-22 (1986). We held that when a prosecutor insists on placing a probationer in the untenable position of choosing between her right to due process at the revocation hearing and her right to remain silent at criminal trial, the probationer's testimony may not be used against her at trial. *Id.* at 298-99, 514 A.2d at 722-23. In *State v. Cate*, we extended

this "exclusionary rule" to a situation in which a sex offender who had testified at trial was required by his probation conditions to admit criminal responsibility at a treatment program, exposing him to potential perjury charges. 165 Vt. 404, 415, 683 A.2d 1010, 1018 (1996). Again, we mandated that probationers be offered use immunity before being forced to incriminate themselves. *Id.* Thus, in the limited circumstances where we have recognized an exception to prosecutors' exclusive authority to grant use immunity, the *defendant* has been faced with the difficult choice of testifying and risking self-incrimination or remaining silent and forfeiting other important rights. See *Cate*, 165 Vt. at 414, 683 A.2d at 1018 (described above); *State v. Loveland*, 165 Vt. 418, 427, 684 A.2d 272, 278 (1996) (statements made by sex offenders at sentencing are inadmissible against them at subsequent criminal proceedings to encourage them to accept treatment rather than emerge from prison untreated); *State v. Drake*, 150 Vt. 235, 237, 552 A.2d 780, 781 (1988) (evidence of crimes for which defendant has not been charged cannot be considered at sentencing unless defendant is offered use immunity); *Begins*, 147 Vt. at 297-98, 514 A.2d at 721-22 (described above). We have not extended this rule, however, to defense witnesses who invoke the privilege against self-incrimination, and we have likewise been cautious to limit its applicability, even to defendants, to situations where public policy demands the availability of immunity. See, e.g., *State v. Gorbea*, 169 Vt. 57, 61-62, 726 A.2d 68, 71 (1999) (declining to expand exclusionary rule where facts did not fit "the limited exceptions carved out in *Loveland* and *Cate*"). Particularly here, where defendant advocates judicial use immunity not to protect his own privilege against self-incrimination, but to compel testimony by his brother that was deemed unreliable by the trial court, the limited exceptions articulated in earlier cases do not support his position.

¶ 9. Nevertheless, defendant argues that the circumstances of his case implicate important public policy considerations and thus warrant an expansion of the exclusionary rule. Without judicial use immunity, he claims, he cannot compel witnesses in his favor and the "fair administration of justice" will be thwarted. Defendant relies solely on the Third Circuit's holding in *Smith*, and urges us to adopt it. 615 F.2d at 969. *Smith* held that courts have an inherent power to grant witness immunity to vindicate a defendant's constitutional right to present exculpatory evidence crucial to his case. *Id.* Recognizing the potential for judicial use immunity

to seriously encroach upon the realm of the executive branch, however, the court emphasized the need for "special safeguards" in determining whether to grant such immunity. *Id.* at 971-72. As such, barring prosecutorial misconduct, it limited the judicial power to grant defense witness immunity to situations where "the proffered testimony [is] clearly exculpatory; the testimony [is] essential; and there [are] no strong governmental interests which countervail against a grant of immunity."[*] *Id.* at 972, 974.

¶ 10. The *Smith* approach, insofar as it does not rely on prosecutorial misconduct, has been uniformly rejected by other federal circuit courts, as well as numerous state courts, that have addressed judicial use immunity. See, e.g., *United States v. Mackey*, 117 F.3d 24, 28 (1st Cir. 1997) (rejecting *Smith* and holding that courts generally cannot compel witness immunity where prosecutor has refused to do so); *United States v. Herrera-Medina*, 853 F.2d 564, 568 (7th Cir. 1988) (same); *United States v. Turkish*, 623 F.2d 769, 778-79 (2d Cir. 1980), *cert. denied*, 449 U.S. 1077 (1981) (same); see also Schoenhaus, *supra*, ¶ 7. But, we need not reach the question of whether the *Smith* approach to judicial immunity is a sound one because defendant fails to meet the minimum requirements of that decision. Contrary to defendant's assertion that the mere proffer of his brother's facially exculpatory testimony triggered the court's inherent power to grant defense witness immunity, *Smith* requires that the defendant "make a convincing showing . . . that the testimony which will be forthcoming is both clearly exculpatory and essential to [his] case" before the court may compel immunity. 615 F.2d at 972. Thus, the court may evaluate the credibility of the proffered evidence, and is not required to simply take it at face value. See *United States v. Sampson*, 661 F. Supp. 514, 519-20 (W.D. Pa. 1987) (explaining that application of the "clearly exculpatory" requirement in *Smith* should include consideration of "the trustworthiness of the evidence that the defendant offers").

¶ 11. Like the trial court, we are unpersuaded by defendant's assertion that his brother's statements regarding the sexual assault of A.H. were clearly exculpatory. Defendant's daughter

---

[*] Two additional requirements for judicial use immunity were articulated by the *Smith* court. Neither of these requirements — that immunity be properly sought in the district court and that the defense witness be available to testify — is at issue here. *Id.* at 972.

alleged that the crime took place in defendant's trailer while his wife and other children were asleep in other rooms. Nonetheless, throughout the pretrial investigations and trial, not a single mention was made of the brother's potential presence in the trailer at the time of the offense. Defendant's son testified that he could not recall defendant's brother ever sleeping in his room; however, defendant's brother claimed that he slept there on the night of the assault. While A.H. testified that she heard her assailant leave her room through a doorway to the hall and shortly thereafter saw defendant walk into the room, defendant's brother claimed that he hid at the foot of her bed as defendant entered the room. Each of these inconsistencies cuts against the trustworthiness of the proffered evidence, and the trial court was justified in considering them.

¶ 12. In addition to these inconsistencies, the circumstances surrounding the confession diminish its credibility. Defendant's brother waited until approximately three years after defendant was first accused to come forward with his confession. By that time, defendant's appeal had been taken and denied, presenting the opportunity for his brother to tailor his confession to the facts and theories already on the record. See *State v. Haner*, No. 2000-577 (Vt. Nov. 21, 2001) (unreported mem.). Furthermore, defendant's brother acknowledged to the police that he was aware that, as a juvenile, he would be subject to a lesser punishment than defendant. When asked by the police why he waited so long to confess, defendant's brother answered that his sister-in-law "was trying to, um, she was the one that was trying to find out what to say, not what to say but um, where to go to report it." Both the officer who took the statement and the judge who heard the testimony at trial reasonably questioned the credibility of the statement.

¶ 13. Finally, the familial relationship between defendant and his brother calls into question the veracity of any exculpatory statements by defendant's brother. See *Sampson*, 661 F. Supp. at 521 (suggesting that a close relationship between witness and defendant undermines the credibility of the proffered testimony in the *Smith* "clearly exculpatory" analysis). Particularly given the testimony of a sheriff's deputy and intern at the state's attorney office, the court had reason to find the confession suspect. The deputy testified that during a July 2003 hearing she sat behind defendant's brother and two women who appeared to be his aunts.

14

She overheard defendant's brother tell the women: "We'll be all right as long as he doesn't do it again when he gets out." In light of the increased motive of close relatives to fabricate exculpatory evidence, the inconsistencies between the confession and witnesses' testimony, and the general circumstances surrounding the confession, we agree with the trial court that defendant failed to make a "convincing showing" that the proffered testimony was "clearly exculpatory." Because defendant failed to meet the first element of the test for judicial use immunity that he advances, the trial court did not err as a matter of law when it declined to grant immunity to defendant's brother.

## II.

¶ 14. Defendant next asserts that the trial court erred by refusing to admit his brother's exculpatory statements into evidence as statements against penal interest. V.R.E. 804(b)(3). The trial court is afforded broad discretion in determining the admissibility of hearsay under Rule 804, and we will not upset its decision "unless there has been an abuse of discretion resulting in prejudice." *State v. Fisher*, 167 Vt. 36, 39, 702 A.2d 41, 43 (1997). Here, as noted in our discussion above, defendant failed to make a sufficient showing of the exculpatory statements' reliability, and therefore the court deemed the confessions by his brother inadmissible hearsay.

¶ 15. Under Rule 804(b)(3), statements that are otherwise hearsay are nonetheless admissible if they are contrary to the declarant's penal interest when made. Where a statement tends to inculpate the declarant, and thereby exculpate the defendant, it is inadmissible "unless corroborating circumstances clearly indicate the trustworthiness of the statement." V.R.E. 804(b)(3). In evaluating the trustworthiness of the exculpatory statements made by defendant's brother in this case, the court relied on *State v. Corliss*, where we stated that to satisfy the condition imposed by Rule 804(b)(3), the defendant must "establish that the [declarant] had both motive and opportunity to commit the crime." 168 Vt. 333, 336, 721 A.2d 438, 441 (1998).

¶ 16. In its analysis, the trial court found that although defendant established that his brother "had sufficient motive to corroborate his confession," he could not similarly show an opportunity to commit the crime. Despite defendant's contention that he

met the corroboration component of Rule 804(b)(3) through his own testimony and that of his mother and son, to the effect that defendant's brother sometimes slept over at the trailer, the court exercised its discretion appropriately. The court took into consideration conflicting testimony regarding when defendant's brother may have been at the trailer and where he might have slept while there, if he slept there at all. Even if defendant met his burden of showing that his brother had the opportunity to commit the sexual assault, however, the court was not required to disregard the plethora of evidence undermining the trustworthiness of his brother's statements.

¶ 17. The trial court also properly considered the source of the confession, defendant's brother, in determining its trustworthiness. See *United States v. Bobo*, 994 F.2d 524, 528 (8th Cir. 1993) (asserting that "certain close relationships, such as the sibling relationship, have long been recognized to diminish the trustworthiness of hearsay statements against the declarant's penal interest"). Further weighing against the reliability of the confession were the circumstances under which it was made, its inconsistency with other evidence in the record, as well as the suspicious statements made by defendant's brother to the police, *supra*, ¶ 12, and to his two aunts, *supra*, ¶ 13. Defendant attempts to counterbalance this evidence of the confession's noncredibility by arguing that "repetition of hearsay equals corroboration" and that his brother's twenty-three letters expressing his guilt therefore provide adequate corroboration for his statements. Defendant, however, misinterprets our decision in *State v. Gallagher*, in which we upheld a trial court's decision to admit hearsay statements made by a child-victim of sexual assault to a teacher and social worker. 150 Vt. 341, 347-48, 554 A.2d 221, 225 (1988). In *Gallagher*, the trustworthiness of the statements was buttressed by "the internal consistency and detail of the child's story, and the child's affect, intelligence, memory and concern for the truth." *Id.* at 348, 554 A.2d at 225. In that case, there were no indications of untrustworthiness similar to those here. Furthermore, there were different considerations due to the policy underlying V.R.E. 804a — that "child-victim's early communications are often highly trustworthy." Reporter's Notes, V.R.E. 804a. Given the lack of corroborating circumstancing clearly indicating the reliability of the statements made by defendant's brother, and more importantly, the abundance of evidence indicating just the opposite, we

conclude that the trial court properly exercised its broad discretion in treating the confessions as inadmissible hearsay.

## III.

¶ 18. We conclude that the trial court did not violate defendant's due process rights by denying his motion for a new trial. Defendant's contention that the court "completely shutdown [his] ability to present clearly exculpatory evidence for prosecuting his [m]otion for [n]ew [t]rial based upon newly discovered evidence" is without merit. To the contrary, the trial court made the appropriate legal determination that judicial use immunity was unwarranted both under existing Vermont law and the law advocated by defendant, and properly exercised its discretion in excluding the hearsay statements by defendant's brother. As the confession underpinning defendant's motion for a new trial was correctly deemed inadmissible due to its unreliability, the court properly dismissed the motion. See *Irving*, 172 Vt. at 528, 768 A.2d at 1289 (holding that we will reverse a trial court decision on a motion for new trial only for abuse of discretion). Defendant could not succeed on the motion for a new trial, as the newly discovered evidence (which properly excluded the substance of the confession) was unlikely to change the result on retrial, and therefore the trial court did not abuse its discretion in denying the motion. See *Palmer*, 169 Vt. at 640, 740 A.2d at 359 (stating that motion for new trial is granted only if circumstances meet a stringent test, including whether the evidence is likely to change the result on retrial).

*Affirmed.*