TESCO AMERICAN, INC. d/b/a
Tesco/Williamsen,
Petitioner,

v.

STRONG INDUSTRIES, INC. and
Brooks Strong, Respondents.

No. 04–0269.

Supreme Court of Texas.

Argued Feb. 17, 2005.

Decided March 17, 2006.

Thomas C. Wright, Chad Michael Forbes, Wright Brown & Close, LLP, Houston, William V. Dorsaneo III, SMU School of Law, Dallas, Thomas G. Gruenert, Gibson–Gruenert, LLP, Houston, George Fred Rhodes, Port Lavaca, for petitioner.

Robert B. Dubose, Sean Reed Cox, Robert M. Roach Jr., Cook & Roach, L.L.P., Houston, S. Scott West, A. Reagan Clark, The West Law Firm, Sugar Land, Stephen G. Tipps, Baker & Botts, L.L.P., Houston, for respondents.

Carlton D. Wilde Jr., Jeffrey Donald Meyer and Sheila Murphy Wollam, Franklin Cardwell & Jones, P.C., Houston, for F.S. New Products, Inc.

Luther H. Soules, III, Langley & Banack, Inc., San Antonio, for amicus curiae.

Justice BRISTER delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice O'NEILL, Justice WAINWRIGHT, Justice MEDINA, Justice GREEN, Justice JOHNSON, and Justice WILLETT joined.

Since Texas became a state in 1845, judicial disqualification has always been a matter of constitutional dimension. Every Texas Constitution has provided that

> No judge shall sit in any case wherein the judge may be interested, or where either of the parties may be connected

with the judge, either by affinity or consanguinity, within such a degree as may be prescribed by law, or when the judge shall have been counsel in the case.[1]

The question presented here is whether an appellate judge is disqualified because, unbeknownst to her, before she took the bench another attorney at her very large firm played a very small role in the early stages of this appeal. For the reasons discussed below, we hold that she is, and thus reverse and remand for further proceedings.

## Background

Strong Industries, Inc. manufactures dump-truck trailing axles [2] designed by its founder, Brooks Strong. In 1992, Tesco American, Inc. signed a dealer agreement with the company that contained covenants not to compete or disclose confidential information. Five years later, Tesco and F.S. New Products, Inc. ("FSNP") began marketing a competing trailing axle.

Both Strongs sued Tesco and FSNP, alleging fraud, breach of contract, and misappropriation of trade secrets. Based on favorable jury findings, the trial court entered judgment against Tesco for over $2 million (for fraud and exemplary damages) and against FSNP for over $100,000 (for breach of contract).

Both appealed. A panel of the First Court of Appeals, in a lengthy and unanimous opinion authored by Justice Laura C. Higley, affirmed as to Tesco, but reversed and rendered a take-nothing judgment as to FSNP.

Shortly thereafter, Tesco filed a motion for rehearing that included a motion to disqualify Justice Higley and reassign the case to a different panel. In the motion, Tesco asserted that Justice Higley was an attorney at Baker Botts L.L.P. in 2001, during which time another attorney at the firm briefly appeared as lead counsel for the Strongs in this appeal (filing a cross-notice of appeal, participating in a status conference, and agreeing to extend deadlines), before moving to withdraw in October 2001. None of the appellate briefs mentioned Baker Botts's limited involvement,[3] and Tesco concedes there is no evidence Justice Higley knew of any connection between her former firm and this case.

Nevertheless, Tesco asserted Justice Higley was constitutionally disqualified, and that the appeal should be assigned to a new panel "to avoid any appearance of impropriety." The panel members disagreed, but referred both motions to the other members of the First Court. Sitting en banc, a majority of that court denied both motions,[4] after which the original panel reissued substantially the same opinion, again authored by Justice Higley.[5] Tesco appeals the denial of its motions, as well as the panel's judgment on the underlying merits.

1. TEX. CONST. art. V, § 11; *see* TEX. CONST. of 1876, art. V, § 11; TEX. CONST. of 1869, art. V, § 11; TEX. CONST. of 1866, art. IV, § 12; TEX. CONST. of 1861, art. IV, § 14 (substituting "cause" for "case" as the last word); TEX. CONST. of 1845, art. IV, § 14 (same).

2. The trailing axles here extend behind the truck, allowing heavier loads while still complying with road weight restrictions.

3. *See* TEX. R. APP. P. 38.1 (requiring appellant's brief to list, *inter alia*, "the names and addresses of all trial and appellate counsel") & 38.2(a)(1)(A) (allowing appellee's brief to omit list of counsel "unless necessary to supplement or correct the appellant's list").

4. 129 S.W.3d 594 (Tex.App.-Houston [1st Dist.] 2003).

5. 129 S.W.3d 606 (Tex.App.-Houston [1st Dist.] 2004).

## Disqualification

For trial judges, Rule 18b(1)(a) of the Texas Rules of Civil Procedure requires disqualification if "a lawyer with whom they previously practiced law served during such association as a lawyer concerning the matter."[6] Three years ago, we held in *In re O'Connor* that this rule requires "vicarious disqualification" for trial judges:

> Rule 18b(1)(a) accordingly recognizes that a judge is vicariously disqualified under the Constitution as having "been counsel in the case" if a lawyer with whom the judge previously practiced law served as counsel to a party concerning the matter during their association. This conclusion is consistent with our holding in *National Medical Enterprises, Inc. v. Godbey*, that "[an] attorney's knowledge is imputed by law to every other attorney in the firm."[7]

For appellate judges, by contrast, Rule 16.1 of the Texas Rules of Appellate Procedure simply states that disqualification is "determined by the Constitution and laws of Texas."[8] The only ground for disqualification asserted here is that Justice Higley was "counsel in the case." The Texas Constitution does not indicate whether that phrase includes the members of a judge's former firm; thus, we must decide whether the Constitution, or just Rule 18b(1)(a), requires vicarious disqualification.

For several reasons, we hold that both do.

■ First, Rule 18b(1)(a) was not intended to expand disqualification further than constitutionally required. As long ago as 1893, this Court noted there was a "grave question" whether the grounds of disqualification could be extended beyond those listed in the Texas Constitution.[9] Both the rule and the Constitution specify the same three grounds for disqualification (interest, connection, and counsel), and no others. "Texas courts have consistently held these three grounds to be the mandatory, inclusive, and exclusive bases for disqualification."[10] Accordingly, our statement in *O'Connor* that Rule 18b(1)(a) "recognizes that a judge is vicariously disqualified *under the Constitution*" reflected our understanding that the rule was intended to *expound* rather than *expand* the Constitution.[11]

■ Second, as *O'Connor* also noted, Texas law imputes one attorney's knowledge to all attorneys in a firm.[12] We adopted this irrebuttable presumption for

---

6. Tex. R. Civ. P. 18b(1)(a).

7. 92 S.W.3d 446, 449 (Tex.2002) (citations omitted).

8. Tex. R. App. P. 16.1.

9. *Nalle v. City of Austin*, 85 Tex. 520, 22 S.W. 668, 669–70 (1893).

10. Charles Bleil & Carol King, *Focus on Judicial Recusal: A Clearing Picture*, 25 Tex. Tech L. Rev. 773, 775–76 (1994); *accord* William Wayne Kilgarlin & Jennifer Bruch, *Disqualification and Recusal of Judges*, 17 St. Mary's L.J. 599, 601–04 (1986); Robert W. Calvert, *Disqualification of Judges*, 47 Tex. B.J. 1330, 1337 (1984).

11. The court of appeals held the 1997 amendment of the appellate rules replacing a reference to Rule 18b with a reference to the Constitution indicates a substantive change. 129 S.W.3d at 600–01; *compare* Tex. R. App. P. 16.1 *with* 785–786 S.W.2d (Texas Cases) xxxi, lxxxi (Supreme Court of Texas Order of Apr. 24, 1990, effective Sept. 1, 1990). But as rules changes may be either substantive or nonsubstantive, this change alone gives no indication either way.

12. 92 S.W.3d at 449 (citing *Nat'l Med. Enter., Inc. v. Godbey*, 924 S.W.2d 123, 131 (Tex. 1996)).

attorney disqualification in *National Medical Enterprises, Inc. v. Godbey*, noting the damage to attorney-client relations and the legal profession generally if the rule were otherwise.[13] The same considerations apply here—proving misuse would be just as difficult, and damage to the profession just as extensive, if lawyers who become appellate judges might take confidential information with them for future use.[14]

■ Finally, we must construe any ambiguity in the constitutional provision here to effectuate its purpose.[15] Repeatedly, the people of Texas have insisted on constitutional protection against "counsel in the case" becoming a judge in the case, a guarantee that makes no distinction between trial and appellate judges. When we adopted Rule 18b(1)(a) and applied it in *O'Connor*, we construed "counsel" to include the former firms of trial judges; we think construing the Constitution otherwise for appellate judges would be construing it too narrowly.

We recognize the risk cited by the First Court that vicarious disqualification may allow litigants to "lie behind the log" and move to disqualify only if an appeal is unsuccessful.[16] But no supine surprise was sprung on the Strongs here—none knew better than they of Baker Botts's early involvement in their appeal.

■ As it is undisputed Justice Higley was an attorney at Baker Botts at the same time another attorney with the firm served as counsel in this appeal, we hold she was disqualified under the Texas Constitution.

### Disposition

We have never before addressed what happens when an appellate opinion and judgment issue before it is discovered that one of the justices is disqualified. "There is considerable diversity of opinion as to the effect on a decision of the fact that one or more of the judges participating therein is disqualified." [17]

To some degree, the different results reached in other jurisdictions can be explained by the extent of the disqualified jurist's involvement. At one extreme, a disqualified appellate judge cannot cast the deciding vote. In *Aetna Life Insurance Co. v. Lavoie*, the United States Supreme Court found a violation of Due Process when a justice of the Alabama Supreme

**13.** 924 S.W.2d at 132.

**14.** We express no opinion on cases involving attorneys entering or leaving government service, as those circumstances and the professional rules governing them are often different from those governing attorneys in private firms. *See, e.g.,* Tex. Disciplinary R. Prof'l Conduct 1.10, reprinted in Tex. Gov't. Code tit. 2, subtit. G, app. A, art. 10 § 9 (allowing attorneys who participate personally and substantially as public officers or employees in a matter to represent private clients in the same matter if the government agency consents); Tex R. Civ. P. 18b(2)(d) (providing a discrete recusal rule for judges who previously served as government lawyers).

**15.** *Tilton v. Marshall*, 925 S.W.2d 672, 677 n. 6 (Tex.1996) ("The construction of any provision of the Texas Constitution depends upon factors such as the language of the constitutional provision itself, its purpose, the historical context in which it was written, the intention of the framers and ratifiers, the application in prior judicial decisions, the relation of the provision to other parts of the Constitution and the law as a whole, the understanding of other branches of government, the law in other jurisdictions, state and federal, constitutional and legal theory, and fundamental values including justice and social policy.").

**16.** 129 S.W.3d at 601.

**17.** Marjorie A. Caner, Annotation, *Disqualification of Judge as Affecting Validity of Decision in Which Other Nondisqualified Judges Participated*, 29 A.L.R.5TH 722, 729 (1995).

Court authored a 5–4 opinion that allowed him to recover a "tidy sum" in his own very similar lawsuit.[18] Notably, the Court vacated the judgment but did not disqualify the remaining judges from further proceedings on remand.[19]

■ At the other extreme, appellate courts universally proceed to dispose of an appeal when one or more members disqualify themselves at the outset.[20] It is true that when an attorney moves between private firms, an irrebuttable presumption of shared confidences attaches to both the sending and receiving firms.[21] But attorneys who take a seat at opposing-counsel table are not like those who take the bench—the former become advocates for an adversary, while judges are advocates only for the law.[22] The Rules of Professional Conduct make no allowance for judges to share the confidences of former

clients with their new colleagues; presuming they do so would be presuming a serious ethical breach.

In between these extremes, there is little consensus. Several courts have concluded that a decision need not be vacated if a disqualified judge's vote was "mere surplusage."[23] At least one would appear to apply this rule even if a disqualified judge authored the opinion,[24] but others hold that a disqualified author requires that the judgment be vacated,[25] and perhaps requires recusal of the entire court.[26]

■ It has always been the rule in Texas that any orders or judgments rendered by a trial judge who is constitutionally disqualified are void and without effect.[27] But in the appellate courts, judgments and opinions are generally rendered by a multi-member court, not a single judge;[28] un-

---

18. 475 U.S. 813, 823–25, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986).

19. *Id.* at 825–27, 106 S.Ct. 1580.

20. *See, e.g., Nalle,* 22 S.W. at 670–71.

21. *Nat'l Med. Enter.,* 924 S.W.2d at 131–32.

22. *See* Tex. Code Jud. Conduct Canon 3(B)(2), reprinted in Tex. Gov't Code tit. 2, subtit. G, app. B ("A judge should be faithful to the law and shall maintain professional competence in it. A judge shall not be swayed by partisan interests, public clamor, or fear of criticism.").

23. *See, e.g., State v. Lund,* 168 Vt. 102, 718 A.2d 413, 418 (1998) (refusing to vacate 5–0 judgment as vote of one allegedly disqualified judge was "mere surplusage"); *Goodheart v. Casey,* 523 Pa. 188, 565 A.2d 757, 762 (1989) (refusing to vacate 6–1 judgment as votes of two allegedly disqualified judges were "mere surplusage"); *State v. Kositzky,* 38 N.D. 616, 166 N.W. 534, 535 (1918) (refusing to vacate 5–0 judgment as alleged disqualification of one judge would not have affected judgment).

24. *See Maier v. Orr,* 758 F.2d 1578, 1583 (Fed.Cir.1985)(noting that if disqualification or recusal of authoring judge had occurred,

the remaining two judges "would have been at liberty to decide the appeal").

25. *See Powell v. Anderson,* 660 N.W.2d 107, 123 (Minn.2003) (vacating judgment as disqualification of authoring judge was not cured by participation of two qualified judges); *Reg'l Sales Agency, Inc. v. Reichert,* 830 P.2d 252 (Utah 1992) (vacating and remanding judgment authored by disqualified judge).

26. *Johnson v. Sturdivant,* 295 Ark. 663B, 758 S.W.2d 415, 415–16 (1988) (vacating 6–1 decision authored by disqualified judge, and voluntarily recusing remaining members).

27. *In re Union Pac. Res. Co.,* 969 S.W.2d 427, 428 (Tex.1998); *Buckholts Indep. Sch. Dist. v. Glaser,* 632 S.W.2d 146, 148 (Tex.1982); *Fry v. Tucker,* 146 Tex. 18, 202 S.W.2d 218, 221 (1947); *Postal Mut. Indem. Co. v. Ellis,* 140 Tex. 570, 169 S.W.2d 482, 484 (1943); *State v. Burks,* 82 Tex. 584, 18 S.W. 662, 662–63 (1891); *Templeton v. Giddings,* 12 S.W. 851, 852 (Tex.1889).

28. Tex. R. App. P. 41.1(a) ("Except as otherwise provided in these rules, a panel's opinion constitutes the court's opinion, and the court

less *every* judge who participates is constitutionally disqualified, the single-judge rule does not easily fit the multi-judge situation.

In *Mapco, Inc. v. Forrest,*[29] we rejected a general rule that appellate judgments issued in violation of the constitution are void. In that case, a court of appeals rendered judgment even though the panel of two judges disagreed, thus violating the constitutional requirement that "[t]he concurrence of a majority of the judges sitting in a section is necessary to decide a case."[30] This Court held the judgment was not void because "[a] judgment is void only when it is apparent that the court rendering the judgment had no jurisdiction of the parties, no jurisdiction of the subject matter, no jurisdiction to enter the judgment, or no capacity to act as a court."[31] But because a 1–1 decision violated the Constitution, we held it must be reversed.[32]

■ Applying the same analysis, we reach the same conclusion here. The judgment below is not void, as the First Court of Appeals certainly had jurisdiction of the parties and the subject matter, jurisdiction to enter judgment, and capacity to act as a court. But the judgment must be reversed because the opinion on which it was based was authored by a justice who was constitutionally disqualified;[33] it would be stretching the Constitution too far to simply assume she was not involved. In accordance with the appellate rules, the two remaining justices may decide this case, but they must do so without the participation of a disqualified justice.[34]

■ We see no need to answer other factual circumstances today. Post-disposition disqualification of appellate judges has been rare in the 160 years the Texas Constitution has required it.[35] The variations in size of Texas appellate courts and the means they employ to dispose of motions,[36] to hear and decide cases,[37] and to grant discretionary review, means that the level of judicial involvement in any particular order may vary greatly from one situation to another. "Because the issue of disquali-

---

must render a judgment in accordance with the panel opinion.").

**29.** 795 S.W.2d 700 (Tex.1990).

**30.** Tex. Const. art. 5, § 6.

**31.** *Id.* at 703; *see also Reiss v. Reiss,* 118 S.W.3d 439, 443 (Tex.2003) ("In general, as long as the court entering a judgment has jurisdiction of the parties and the subject matter and does not act outside its capacity as a court, the judgment is not void. Errors other than lack of jurisdiction, such as 'a court's action contrary to a statute or statutory equivalent,' merely render the judgment voidable so that it may be 'corrected through the ordinary appellate process or other proper proceedings.' ").

**32.** *See Carter v. Mapco, Inc.,* 33 Tex.Sup.Ct.J. 465 (May 9, 1990) (unpublished order)(citing *Hayden v. Liberty Mut. Ins. Co.,* 786 S.W.2d 260 (Tex.1990)).

**33.** *See* Tex. R. App. P. 41.1 (requiring that court of appeals "must render a judgment in accordance with the panel opinion").

**34.** Tex. R. App. P. 41.1(b) ("After argument, if for any reason a member of the panel cannot participate in deciding a case, the case may be decided by the two remaining justices.").

**35.** *See, e.g., McCullough v. Kitzman,* 50 S.W.3d 87 (Tex.App.-Waco 2001, pet. denied).

**36.** *See* Tex. R. App. P. 10.4 (allowing motions in courts of appeals to be decided by a single justice, a panel, or the entire court).

**37.** *See, e.g.,* Tex. Const. art V., § 6(a) (allowing courts of appeals to "sit in sections"); Tex. R. App. P. 41.1 (allowing two members of court of appeals to decide argued case, but requiring three members if case is submitted without oral argument) & 59.1 (allowing six members of Supreme Court to issue opinion without oral argument).

fication of a single member of a multi-member panel arises in a variety of factual contexts, sound judicial practice wisely counsels judges to avoid unnecessary declarations on issues not presented, briefed, or argued." [38]

Tesco urges us to take two additional steps. First, it asks us to address the merits of its appeal, alleging numerous mistakes by the panel below. But as the judgment must be reversed due to the constitutional disqualification, we postpone addressing those arguments (as we did in *Mapco*) until after that defect has been remedied.[39]

The dissent would review the merits here on the ground that "remanding this case is for appearance' sake." We agree there would be an appearance of impropriety if opinions by disqualified justices are simply reviewed on the merits like every other. But constitutional disqualification involves more than appearances; the substantive right is to an appeal decided by qualified judges alone. It is precisely because appellate court opinions are the product of more than one justice that, if one is disqualified, the process must be conducted again. The argument that it is a "fool's errand" to reverse orders by disqualified judges and require reconsideration by qualified ones is an argument that the Constitution should not require disqualification of appellate justices at all.

▪▪▪ Second, Tesco argues that this case should be assigned to an entirely different panel of the First Court of Appeals. For several reasons, we disagree. Tesco does not assert the remaining panel members are disqualified, and nothing in the Constitution suggests otherwise—the record reflects no personal interests, connection to the parties, or "counsel in the case" problem under the standards already discussed. Whether the circumstances here require recusal by the remaining panel members is a matter not before us, as Tesco insists this was not its motion below. Further, a party has no right to any particular panel of an appellate court; the assignment of cases and judges to panels is a matter within that court's discretion.

Accordingly, we reverse the court of appeals' judgment against Tesco, and remand for further proceedings.[40]

Justice HECHT filed a dissenting opinion.

Justice HECHT, dissenting.

One Justice on the court of appeals panel, the author of its opinion,[1] practiced in a large firm with two lawyers who, unbeknownst to her, briefly represented two parties in this case, withdrawing more than a year before she took the bench. She and her court first learned of this fact after her opinion issued, on motion for rehearing, and the court concluded en banc that she was not constitutionally disqualified.[2] The other two members of the panel declined to recuse themselves[3] and vot-

---

**38.** *Lavoie*, 475 U.S. at 827 n. 4, 106 S.Ct. 1580 (citation omitted).

**39.** *See Mapco, Inc. v. Carter*, 817 S.W.2d 686, 687 & n. 2 (Tex.1991).

**40.** As the Strongs have not appealed the take-nothing judgment in favor of FSNP, it remains unaffected. *See* Tex. R. App. P. 53.1; *Browning–Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 928 n. 6 (Tex.1993); *Gulf Coast Inv.*

*Corp. v. Brown*, 821 S.W.2d 159, 160 n. 1 (Tex.1991).

**1.** 129 S.W.3d 606 (Tex.App.—Houston [1st Dist.] 2004).

**2.** 129 S.W.3d 594 (Tex.App.—Houston [1st Dist.] 2003) (en banc order on motion to disqualify).

**3.** *Id.* at 596.

ed to deny the motion for rehearing. In this Court, the petitioner has raised the disqualification issue along with a number of other issues on the merits of the appeal, all of which have been fully briefed. The Court concludes, I think correctly, that the author of the court of appeals' opinion was disqualified from sitting in the case, but then remands the case to that court to reconsider the merits, again, having done so once already on motion for rehearing. The other two Justices who participated in the decision before are not required to recuse but may continue to sit on the case, even though their having denied rehearing before leaves little doubt as to the outcome on remand. They may even reissue the same opinion, perhaps this time per curiam. If this futile exercise does not exhaust the parties, they will return, almost certainly with the same issues and the same arguments, and all the Court will have accomplished is to waste everyone's time and resources. The merits of the case are fully and fairly before us, and I

4. TEX. CONST. art. V, § 11 ("No judge shall sit in any case wherein the judge may be interested, or where either of the parties may be connected with the judge, either by affinity or consanguinity, within such a degree as may be prescribed by law, or when the judge shall have been counsel in the case.").

5. 92 S.W.3d 446, 449 (Tex.2002) (per curiam).

6. TEX. R. CIV. P. 18b(1)(a) ("Judges shall disqualify themselves in all proceedings in which: (a) they have served as a lawyer in the matter in controversy, or a lawyer with whom they previously practiced law served during such association as a lawyer concerning the matter....").

7. 129 S.W.3d at 600 ("*O'Connor* specifically distinguishes the constitutional standard for disqualification from the standard for disqualification under Rule of Civil Procedure 18b. Quoting the language from article V, section 11 of the constitution that '[n]o judge shall sit in any case ... when the judge shall have been counsel in the case,' *O'Connor* states,

would decide them now. Accordingly, I respectfully dissent.

I agree with the Court that before she took the bench, Justice Higley was "counsel" in this case within the meaning of article V, section 11 of the Texas Constitution, which states in part that "[n]o judge shall sit in any case ... when the judge shall have been counsel in the case." [4] Though she never *actually* represented respondents Strong Industries, Inc. and Brooks Strong when she was in practice, two lawyers in her firm did, without her knowledge, for a few months before any briefs were filed in the court of appeals, and we held in *In re O'Connor* [5] that for purposes of article V, section 11, "counsel" includes a lawyer in the same firm with a party's counsel. The court of appeals read *O'Connor* as applying only Rule 18b(1)(a) of the Texas Rules of Civil Procedure, which expressly includes counsel's associates,[6] and not the Constitution,[7] but the Court stated quite clearly:

'Before a judge is disqualified on this ground, "it is necessary that *the judge acted as counsel* for some of the parties in [the] suit before him in some proceeding in which the issues were the same as in the case before him." ' The constitutional standard thus requires that the judge *himself* must have acted as counsel for a party to the litigation on the same matter. *O'Connor* continues, '*Rule 18b(1)(a)* incorporates this [constitutional] language and also provides that a judge is disqualified if "a lawyer with whom [the judge] previously served during such association as a lawyer concerning the matter." Rule 18b(1)(a) accordingly recognizes that a judge is *vicariously disqualified* under the constitution as having "been counsel in the case" if a lawyer with whom the judge previously practiced law served as counsel to a party concerning the matter during their association.' *O'Connor* thus expressly distinguishes the constitutional standard for disqualification of a judge who personally served as counsel in a case from the procedural standard set out in Rule 18b(1)(a), promulgated under the constitution, which includes not only direct personal

Rule 18b(1)(a) incorporates [the constitutional] language, and also provides that a judge is disqualified if "a lawyer with whom [the judge] previously practiced law served during such association as a lawyer concerning the matter." Rule 18b(1)(a) accordingly recognizes that a judge is vicariously disqualified *under the Constitution* as having "been counsel in the case" if a lawyer with whom the judge previously practiced law served as counsel to a party concerning the matter during their association.[8]

The court of appeals interpreted "under the Constitution" to mean that the rule had been adopted with constitutional authority,[9] but grammatically, the phrase modifies "disqualified", not "rule". Moreover, if, as the court of appeals believed, the rule enlarged the constitutional grounds for judicial disqualification, it is not clear how it could have been constitutionally authorized. The Constitution cannot be amended, expanded, or contracted by court rule. What we said in *O'Connor* is that Rule 18b(1)(a) correctly sets out the meaning of "counsel" in article V, section 11.[10] Although *O'Connor* involved the dis-

qualification of a trial judge, article V, section 11 expressly applies the same standard to appellate judges, providing for replacements when a member of an appellate court is "thus disqualified".[11]

We offered no justification in *O'Connor* for our construction of "counsel" in article V, section 11, other than to observe that it was "consistent with our holding ... that '[an] attorney's knowledge is imputed by law to every other attorney in the firm'" for the purpose of determining whether an attorney is disqualified from representing a client.[12] Although that was true (it *was* consistent), the comparison is not very instructive because the bases for disqualifying attorneys and judges are not the same. The principal reason for disqualifying an attorney from accepting representation in conflict with a former associate's client is to preserve client confidences.[13] The constitutional bases for judicial disqualification are not aimed at preventing judges from sharing the confidences of their former clients or their former firm's clients with their new colleagues, although such disclosures would be improper. Rather, the purpose of article V, section 11 is to

disqualification but also vicarious disqualification.") (brackets and emphasis in original, indented quote replaced with quotation marks, citations omitted).

**8.** 92 S.W.3d at 448–49 (emphasis added, citations omitted).

**9.** 129 S.W.3d at 600 n. 8 ("That Rule 18a is promulgated 'under the constitution' does not entail that it is co-extensive with article V, section 11. All valid rules ultimately derive their authority from constitutional provisions.") (citation omitted).

**10.** 92 S.W.3d at 449.

**11.** TEX. CONST. art. V, § 11 ("When the Supreme Court, the Court of Criminal Appeals, the Court of Appeals, or any member of any of those courts shall be thus disqualified to hear

and determine any case or cases in said court, the same shall be certified to the Governor of the State, who shall immediately commission the requisite number of persons learned in the law for the trial and determination of such cause or causes. When a judge of the District Court is disqualified by any of the causes above stated, the parties may, by consent, appoint a proper person to try said case; or upon their failing to do so, a competent person may be appointed to try the same in the county where it is pending, in such manner as may be prescribed by law.").

**12.** 92 S.W.3d at 449 (citing *National Med. Enters., Inc. v. Godbey*, 924 S.W.2d 123, 131 (Tex.1996)).

**13.** *National Med. Enters.*, 924 S.W.2d at 131 (observing that the authorities supporting disqualification were based "on the attorney's duty to the party to preserve its confidences").

preserve the appearance of judicial impartiality by prohibiting a judge from sitting in a case to which he or she has too close a relationship—financial, familial, or professional.[14]

With respect to professional relationships, the constitutional concern is that a judge may appear not to be impartial in a case in which he or an associate once participated. To be sure, no judge in Justice Higley's situation—that is, from a firm with 500–plus lawyers,[15] two of whom, briefly and without any awareness on her part, represented clients in a case that would later be randomly assigned to her on a panel of a nine-member appellate court, more than a year after her former associates had withdrawn from representing the clients—could possibly be suspected of actual partiality due to that representation. But the appearance would be stronger, even compelling, if the firm were much smaller or the representation much longer, or if the judge knew of the representation and, say, had discussed it with his or her former partner. The constitutional rule does not permit disqualification to turn on such factors, however, for two reasons. The consequences of judicial disqualification are too severe—any action by a constitutionally disqualified judge is void and may therefore be challenged at any time[16]—for a rule that depends on too many circumstances. And the issue is appearance, not actuality, so the rule can apply categorically without regard to circumstances tending to show, or not show, impartiality in fact.

The court of appeals worried that this construction of article V, section 11 would "enable litigants to 'lie behind the log' and 'sample' the justices of this Court before moving to disqualify, and then to void the judgment and opinion of the Court by collateral attack on otherwise final judgments on merely procedural grounds."[17] Of course, a litigant can always use constitutional disqualification this way, but the court's concern appears to have been the *increased* risk when a judge's only connec-

---

14. *Newcome v. Light,* 58 Tex. 141, 145 (1882) ("Disqualification by reason of having been of counsel, relied on in this case, seems to be of recent origin and created by express constitutional or statutory provision. As it may exist independently of relationship or pecuniary interest in the result, it was doubtless based upon considerations of supposed bias, partiality or prejudice, arising from the relationship of client and attorney, which may reasonably be presumed might influence the action of the judge."); *Slaven v. Wheeler,* 58 Tex. 23, 25 (1882) ("The object of that provision was to secure to litigants an impartial judge, one who had not previously formed an opinion or reached a conclusion in regard to the subject matter of that particular case; and additional force should be given to that construction when the advice given and conclusion formed is between the identical parties who are afterwards litigants."). *See also Taylor v. Williams,* 26 Tex. 583, 585–586 (1863) (noting that, under the common law, a judge was not disqualified from sitting in a cause in which he had been of counsel); *Chambers v. Hodges,* 23 Tex. 104, 111–112 (1859) (concluding that a judgment rendered in 1842, and final in 1848, was not subject to Tex. Const. of 1845, art. IV, § 14, and would not, in the absence of any other law, be void on the ground that the district judge had acted as an attorney in the case).

15. *See Lexis Nexis Sixth Annual Survey—1,000 Largest Law Firms,* Corp. Legal Times 73 (June 2001) (reporting that Baker Botts' main office was in Houston and that the firm had 581 lawyers in the United States and abroad).

16. *Buckholts Indep. Sch. Dist. v. Glaser,* 632 S.W.2d 146, 148 (Tex.1982) (citing *Fry v. Tucker,* 146 Tex. 18, 202 S.W.2d 218, 221 (1947), *Templeton v. Giddings,* 12 S.W. 851 (Tex.1889), *Stephenson v. Kirkham,* 297 S.W. 265, 267 (Tex.Civ.App.—San Antonio 1927, writ ref'd), and *Nalle v. City of Austin,* 85 Tex. 520, 22 S.W. 960 (1893)).

17. 129 S.W.3d 594, 601 (Tex.App.—Houston [1st Dist.] 2003).

tion with a party was through the judge's former associate and thus less likely to be recognized and raised earlier. The concern is real, of course, although not in this case. Nothing indicates that petitioner Tesco American, Inc. waited until after the panel opinion issued before raising the disqualification issue, and nothing suggests that Justice Higley previously had any inkling of her former firm's representation of the Strongs. Her former associates were not identified as counsel in any of the briefs, and the four documents in the court of appeals' file on which their names appeared—a notice of cross-appeal, a status report, a joint motion to extend time, and a motion to withdraw—were not likely to have been noticed by the Justices in deciding whether to sit on the case. But even if the actors' hands had not been so clean, the risk of opportunism in raising disqualification operates not to shrink the constitutional grounds but to encourage diligence in determining that no basis for disqualification exists.

So I agree that Justice Higley was disqualified from sitting in this case. I also agree that her disqualification provides no basis for also disqualifying the other two members of the panel or the other eight members of the court, but for reasons different from those offered by the Court. The Court's analysis runs thus:

- as we have held,[18] for purposes of lawyer disqualification, a lawyer's associates must be irrebuttably presumed to have knowledge of the lawyer's clients' confidences because of (i) the difficulty in proving what an associate actually knew, and (ii) the importance of protecting client relations and the legal profession from possible misconduct;

- for the same reasons, the same presumption is necessary for purposes of judicial disqualification because "lawyers who become appellate judges"—like lawyers who leave firms for other reasons—"might take confidential information with them for future use";[19]

- we have also held,[20] again for the same reasons, that for purposes of lawyer disqualification an associate's imputed knowledge is further imputed to the lawyers with whom he or she later associates;

- but we cannot likewise presume, for purposes of judicial disqualification, that a judge may share the confidences of a former associate's client with his or her colleagues because (i) a judge is not an advocate for an adversary, and (ii) to do so "would be presuming a serious ethical breach."[21]

It is, of course, just as unethical for a lawyer to reveal client confidences as it is for a judge,[22] and it is not at all clear to me why we must presume, irrebuttably, that a lawyer acts unethically, while refusing even to consider that a judge may.

As I have explained above, I do not think the analogy to lawyer disqualification works well. The reasons for the double imputation in the context of lawyer disqualification—the difficulty of proving actual knowledge, and the risk of harm to client relations and the legal profession—

18. *In re O'Connor,* 92 S.W.3d 446, 449 (Tex. 2002) (per curiam); *National Med. Enters., Inc. v. Godbey,* 924 S.W.2d 123, 131 (Tex. 1996).

19. *Ante* at 554.

20. *National Med. Enters.,* 924 S.W.2d at 131–132.

21. *Ante* at 555.

22. Tex. Disciplinary R. Prof'l Conduct 1.05, *reprinted in* Tex. Gov't Code, tit. 2, subtit. G app. A (Tex. State Bar art. X, § 9).

lack the same force in determining judicial disqualification, which is concerned with preventing an appearance of partiality. It is simply carrying appearances too far to say that a judge's *mere* association on the same appellate court or panel with another judge who happens to be disqualified casts any reasonable doubt on his or her own impartiality. To impute disqualification in such a situation not only would do nothing to serve the constitutional purpose of avoiding the appearance of partiality, it would impede the operation of appellate courts by forcing the transfer of a case whenever a single Justice is disqualified. Thus, I agree that the other two members of the panel in this case, Chief Justice Radack and Justice Alcala, were not disqualified from sitting, nor was any other member of the court.

I also agree with the Court that the court of appeals' judgment was not void by reason of Justice Higley's disqualification because the concurrence of the other panel members was enough to decide the case.[23] But I disagree that the judgment must be reversed and the case remanded for reconsideration. The Court's justification for this result is contained in but two sentences:

> But the judgment must be reversed because the opinion on which it was based was authored by a justice who was constitutionally disqualified; it would be stretching the Constitution too far to simply assume [Justice Higley] was not

involved. In accordance with the appellate rules, the two remaining justices may decide this case, but they must do so without the participation of a disqualified justice.[24]

Why? Certainly not because the participation of a disqualified justice affected the result when we have every indication it did not. Chief Justice Radack and Justice Alcala knew of the factual basis for Justice Higley's disqualification, as did every other member of the court, since the matter was considered en banc.[25] And being fully aware of the facts, they declined to recuse[26] and voted to deny rehearing.[27] True, they were mistaken on the legal issue of disqualification as it turns out, but the Court cannot explain why they might have ruled differently on the merits had they known Justice Higley was disqualified, or why they might do so on remand, now that the mistake has been set right. No one suggests that Justice Higley was aware of any basis for disqualification before she issued her opinion, so it is impossible to think that facts revealed for the first time afterward could have influenced her.

The only possible reason for remanding this case is for appearance' sake. The rule will be that any time a disqualified appellate judge participates in a decision, right or wrong, it must be reversed, period, even if it is to be reconsidered by the same court and two of the same judges, who

---

**23.** *See* TEX. CONST. art. V, § 6 ("The Court of Appeals may sit in sections as authorized by law. The concurrence of a majority of the judges sitting in a section is necessary to decide a case."); TEX. GOV'T CODE § 22.222(a), (c)("(a) Each court of appeals may sit in panels of not fewer than three justices for the purpose of hearing cases.... (c) A majority of a panel constitutes a quorum for the transaction of business, and the concurrence of a majority of a panel is necessary for a decision."); TEX R. APP. P. 41.1(b) ("After argument, if for any reason a member of the panel cannot participate in deciding a case, the case may be decided by the two remaining justices.").

**24.** *Ante* at 556 (citations omitted).

**25.** 129 S.W.3d 594.

**26.** *Id.* at 596.

**27.** 129 S.W.3d 606.

may reissue the same opinion. If this approach bears any real benefit, and I cannot see that it does, the detriments are greater. A remand suggests that Justices on the courts of appeals do not endorse the opinions and judgments they join but simply go along with the author. Yet the Court itself acknowledges that "judgments and opinions are generally rendered by a multi-member court, not a single judge".[28] The reality is that appellate court opinions are usually the work of many hands. Colleagues offer or insist on changes in text and approach. The result is importantly a collegial product, even when signed by one Justice. The message of today's remand disserves this process.

Furthermore, a remand sends the parties on what is almost certain to be a fool's errand, wasting their time and resources and, though to a much lesser extent, those of the court of appeals. Having presented their case for decision twice now, the parties are returned to the court of appeals to reconfirm that the same Justices who decided their case and denied rehearing have still not changed their minds. Only one thing has changed: the court of appeals was mistaken about one of the constitutional grounds for disqualification, a matter unrelated to any other issue in the case. Of course, the court is free to reassign the case to an entirely new panel, have it reargued, maybe even rebriefed, and write an entirely new opinion, but since none of these things is required or useful, none is likely to happen. Instead, the Justices who joined Justice Higley's opinion will almost certainly reaffirm their decision, and then the parties can refile their petition for review and response. The Court will consider them again, and if it requests briefing as it did before, the parties will file the same briefs, omitting the discussion of disqualification. The parties will get twice as many appeals on the exact same issues, but the same number of decisions. All this to preserve appearances.

Finally, regarding the procedure to be used by an appellate court to determine whether one of its members is disqualified, the court of appeals divided over whether it could itself consider issues of disqualification raised on motion, as the majority held,[29] or whether those issues should properly be left to this Court on petition for mandamus, as the dissent urged.[30] The Court does not address this issue but tacitly sides with the majority. I, too, agree with the majority that an appellate court should follow the same procedure in determining disqualification as in determining recusal.[31]

Justice Higley's participation in the decision of the court of appeals was error, though no fault of her own, but not error that requires reversal. We have an opinion joined by two other Justices, fully explaining the reasons for their decision, and we should proceed to determine the issues the parties have raised here. I respectfully dissent.

**28.** *Ante* at 555.

**29.** 129 S.W.3d at 597 (citing *McCullough v. Kitzman*, 50 S.W.3d 87, 88 (Tex.App.—Waco 2001, pet. denied); *Sears v. Olivarez*, 28 S.W.3d 611, 615 (Tex.App.—Corpus Christi 2000, no pet.)).

**30.** *Id.* at 604–605 (Jennings, J., dissenting).

**31.** *See* Tex. R. App. P. 16.3(b).