# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-08-00793-CV

---

**Public Utility Commission of Texas; and Electric Transmission Texas, LLC, Appellants**

**v.**

**Cities of Harlingen, McAllen, Mission, Port Lavaca, Rockport, and Victoria;
State of Texas; and Texas Industrial Energy Consumers, Appellees**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
NO. D-1-GV-08-000253, HONORABLE DARLENE BYRNE, JUDGE PRESIDING**

---

## D I S S E N T I N G   O P I N I O N

I respectfully dissent from the majority's opinion deciding the merits of this appeal without affording the parties an opportunity to address the procedural shortcomings at issue here. My quarrel is not with a justice's post-argument recusal or the reconstitution of the panel alone, but with the majority's refusal as well to recognize the potential conflict of the remaining panel members and the corresponding failure to seek input from the parties, as permitted and expressly contemplated in rule 18b(5) of the Texas Rules of Civil Procedure, on whether to waive any of these conflicts. Tex. R. Civ. P. 18b(5) (allowing waiver after full disclosure).

### *Facts & Procedural Background*

The notice of appeal was filed in this cause on December 31, 2008. That same day, this appeal was assigned to Justice Pemberton pursuant to this Court's practice of assigning cases

to each justice on a rotating basis. Briefs were filed by the parties, and oral argument was scheduled for April 24, 2009, before a panel of three justices—comprised of Justices Patterson, Pemberton and Waldrop. All three justices participated in oral argument, and the case was submitted at the close of argument. After argument, these three panel members participated in conference deliberations in which each justice expressed his views about the case, and the panel reached a tentative decision. Although the majority asserts that such deliberations were of little or no significance, the majority does not dispute that deliberations occurred or that Justice Pemberton participated in these deliberations.

Thereafter, on May 4, 2009, Justice Pemberton advised the panel and the clerk of this Court that he "need[ed]" to recuse himself from the case. When asked about the basis for his recusal, Justice Pemberton stated, "A family member arguably has an indirect financial interest." He further stated, "I have recused based on [Texas Rule of Civil Procedure] 18b(2)(a) because one could reasonably argue that a family member has an indirect 'financial interest' (see [Tex. R. Civ. P.] 18b(4)(d)) in the outcome of the litigation." Although I immediately urged Justice Pemberton to disclose the nature of his conflict and ask the parties to consider whether to waive that conflict,[1] he declined to do so.

That same day, in the alternative and absent a disclosure by Justice Pemberton and waiver by the parties, I urged that the case be reassigned to a new panel for immediate reargument,

---

[1] *See* Tex. R. Civ. P. 18b(5) (allowing parties to waive any ground for recusal after it is fully disclosed on the record); *see also Nueces County Drainage & Conservation Dist. No. 2 v. Bevly*, 519 S.W.2d 938, 952-53 (Tex. Civ. App.—Corpus Christi 1975, writ ref'd n.r.e.) (supplemental op.) (granting all parties leave to amend briefs to raise disqualification issue).

2

since Justice Pemberton as the authoring judge had participated in oral argument and had tentatively decided the case in concert with the other panel members in deliberations after oral argument. The case was not reassigned to a new panel.

Instead, on June 10, 2009, without notice or further explanation to the parties or this panel member, the case was transferred to Justice Waldrop. Between June 23rd and July 10th, several parties submitted motions for leave to file post-submission briefs. Notations on each of these motions, as well as the post-submission letter briefs to be filed by the parties, show that the motions and briefs were distributed to Justices Patterson, Pemberton, and Waldrop,[2] even though Justice Pemberton had already recused himself before these motions were received or filed.[3]

On September 16, 2009, I again urged that this appeal should be reassigned and reargued to a new three-judge panel or, in the alternative, the parties should be informed of the nature of Justice Pemberton's conflict so that they could consider whether to waive it. As the two remaining panel members were unable to agree on whether the case should be reargued before a new panel or whether to present the circumstances and posture of the case resulting from Justice Pemberton's recusal to the parties for their input, another justice was designated to replace Justice Pemberton. *See* Tex. R. App. P. 41(b)(1).

---

[2] The record also shows that the Court received one post-argument amicus brief that was distributed to the three original panel members.

[3] Court records further indicate that each motion was granted pursuant to instructions from Justice Waldrop's chambers. In addition, on July 6, 2009, although the case was already under submission to the panel, the clerk's office, acting pursuant to instructions from Justice Waldrop's chambers, dismissed as moot a motion for preferential submission and decision without seeking input from the panel members. Indeed, the motion was not moot as the parties sought the earliest possible resolution of this dispute and that it be given "precedence over other pending cases."

Two days later—and five months after oral argument—the parties were advised in a one-sentence letter from the clerk's office that Justice Pemberton had recused himself and Justice Puryear had been designated to replace him.[4] Without affording the parties an opportunity to address any potential conflicts of the remaining panel members or, in the alternative, reassigning this appeal for reargument to a new three-judge panel untainted by the participation of a justice who has now recused himself, the majority purports to decide this case.

### *Inadequacy of Parties' Remedies*

This Court is bound by its own precedent and the rules of appellate procedure. *See* Tex. R. App. P. 16.3(a) ("A party may file a motion to recuse a justice or judge before whom the case is pending. The motion must be filed promptly . . . ."); *Ex Parte Ellis*, 275 S.W.3d 109, 122-23 (Tex. App.—Austin 2008, no pet.) (holding state's motion to recuse was untimely filed because not filed until after opinion was released); *see also McCullough v. Kitzman*, 50 S.W.3d 87, 88 (Tex. App.—Waco 2001, pet. denied) (time to file motion to recuse expires once opinion has been released). The majority errs in its claim that it is an improper use of a dissenting opinion to call into question the procedures employed by a court to reach a decision in a particular case without addressing the merits. *See, e.g.*, *Neilson v. Colgate-Palmolive Co.*, 199 F.3d 642, 666 (2d Cir. 1999) (Sotomayor, J., dissenting in part based on procedures employed by district court); *Cromwell*

---

[4] The full text of the letter read:

Pursuant to the recusal of Justice Pemberton in the above referenced cause, Justice Puryear has been designated to replace Justice Pemberton on the panel. *See* Tex. R. App. P. 41.1.

*v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1279 (6th Cir. 1991) (Jones, J., dissenting from majority's analysis regarding procedures employed by district court upon acceptance of removal jurisdiction); *Id.* at 1279 (Suhrheinrich, J., concurring in Jones' dissent); *Feldman v. Marks*, 960 S.W.2d 613, 615-16 (Tex. 1996) (Gonzalez, J., dissenting from court's decision on merits after *sua sponte* request to supplement record without motion or input from parties); *In the Interest of S.T.*, 239 S.W.3d 452, 458 (Tex. App.—Waco 2007, pet. denied) (Gray, C.J., dissenting from new jurisdictional procedures announced by majority); *Benson v. State*, 224 S.W.3d 485, 501 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (Keyes, J., dissenting from en banc majority's decision to overrule issue not properly before court). By deciding the merits of this appeal without full disclosure and affording the parties an opportunity to address the procedural shortcomings at issue, the majority may foreclose the opportunity to do so altogether.

The Texas Supreme Court has recognized that procedural defects involving judicial disqualification and recusal should be addressed before reaching the merits of an appeal. *See Tesco Am., Inc. v. Strong Indus., Inc.*, 221 S.W.3d 550, 557 (Tex. 2006) (postponing addressing merits of appeal until after procedural defects have been remedied on remand). The rules of appellate procedure and this Court's precedent are consistent with the supreme court's approach in *Tesco*. Appellate rule 16.3(a) allows a party to "file a motion to recuse a justice or judge before whom the case is pending" and requires the motion to "be filed promptly after the party has reason to believe that the justice or judge should not participate in deciding the case." *See* Tex. R. App. P. 16.3(a). This Court has interpreted the language in appellate rule 16.3(a) to mean that the motion to

recuse must be filed while the case is pending—*i.e.*, before the appellate court releases its opinion. *Ex Parte Ellis*, 275 S.W.3d at 122-23 (citing *McCullough*, 50 S.W.3d at 88).

The majority asserts, however, that "the parties were put on notice of the recusal with ample opportunity to raise an objection or complaint regarding the procedure this Court has followed, both with respect to the recusal and to the reconstitution of the panel," and the majority observes that "[n]o party has raised any objection or complaint." *See* slip op., *supra*, at 39 n.17. The majority therefore contends that the complaints raised in this dissent have been raised "*sua sponte* without the benefit of any objection by a party, any party having raised the issue, or any party briefing the question." *See id.* But the majority presumes too much. To date, the parties have received a belated one-sentence letter notifying them that Justice Pemberton has recused himself and that another justice has been designated to replace him. They have not been informed that Justice Pemberton was originally assigned to be the authoring judge or that he participated in post-argument deliberations with the other panel members and reached a tentative decision in this case prior to recusing himself. Nor were the parties afforded an opportunity to consider, much less address, whether Justice Pemberton's participation and recusal under these circumstances would have any affect on the remaining panel members.

In the absence of contrary evidence in the record, the parties are entitled to a general presumption in favor of the regularity of judicial proceedings. *See, e.g.*, *McElyea v. Parker*, 81 S.W.2d 649, 653 (1935); *Southern Ins. Co. v. Brewster*, 249 S.W.3d 6, 13 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). Given the presumption of judicial honesty and integrity, *see Withrow v. Larkin*, 421 U.S. 35, 47 (1975), and without knowledge of the circumstances surrounding

Justice Pemberton's participation prior to his recusal, what objection or complaint could the parties reasonably be expected to raise? Even if the parties raise an objection after the majority's opinion on the merits is released, it is debatable, in light of this Court's interpretation of appellate rule 16.3 in *Ex Parte Ellis*, 275 S.W.3d at 122-23, whether that objection would even be considered. To preserve the parties' remedies, then, it is necessary to dissent from the procedural shortcomings at issue without addressing the merits.

### *Duty to Decide v. Avoid Impropriety, or Both*

The majority observes that Canon 3(B)(1) of the Code of Judicial Conduct states that "[a] judge shall hear and decide matters assigned to the judge except those in which disqualification is required or recusal is appropriate." Tex. Code Jud. Conduct, Canon 3(B)(1) (reprinted in *Texas Rules of Court* (West 2009)). But this same code also requires a judge to "comply with the law and [to] act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." *Id.* Canon 2(A). Despite these dual obligations, the majority ignores the possibility of conflict regarding the remaining panel members—*i.e.*, Justice Waldrop and this justice—occasioned by Justice Pemberton's recusal. Although I continue to urge that these circumstances should be disclosed to the parties and that they be afforded an opportunity to waive or object to any potential conflict as contemplated by the rules of civil and appellate procedure, the majority has rejected these requests. The majority asserts, "If the dissenting judge honestly believes she is somehow 'conflicted,' 'not neutral,' or no longer 'untainted' . . . she is *obligated* to recuse herself and not serve on the panel." *See* slip op., *supra*, at 37 (emphasis added). But this is not what the rules require.

7

The rules of civil procedure provide, "The parties to a proceeding may waive any ground for recusal after it is fully disclosed on the record." Tex. R. Civ. P. 18b(5). To the extent Justice Pemberton's participation and recusal gives rise to circumstances in which this justice's impartiality might reasonably be questioned, the parties may waive any ground for recusal after full disclosure on the record. *Id.* And, even if the majority declines to engage in full disclosure on the record and afford the parties an opportunity to waive any conflict, that does not preclude this justice from doing so. *See id.* Thus, the majority is wrong to argue that I am somehow "obligated" to recuse myself without first affording the parties an opportunity to waive or object to any conflict.[5]

From the moment Justice Pemberton recused himself in early May 2009, I urged this Court to follow the process contemplated in rule 18b(5) of the Texas Rules of Civil Procedure and afford the parties an opportunity to waive any conflict.[6] Given the procedural circumstances surrounding Justice Pemberton's participation in these proceedings, I believe it is necessary at least to afford the parties an opportunity to address the conflict of the remaining panel members or possibility that the case should be reassigned and reargued to a new panel. *See* Tex. R. Civ. P. 18b(5); Tex. R. App. P. 41.1(b).

---

[5] The majority misrepresents and misquotes the statements and positions taken in this dissent, embellishing words and arguments into overstatement. *See* slip op., *supra*, at 36 & n.15. In particular, at footnote 15 of the majority opinion, the majority asserts that the dissenting judge has never requested the panel or the Court to send the parties notice of a "potential conflict." But this is exactly what I have sought—and continue to urge here—from the moment Justice Pemberton recused himself.

[6] Prior to the commencement of oral argument in this very case, Justice Waldrop announced to the parties that his former law firm had filed an amicus brief in support of the Commission's order and gave the parties present an opportunity to raise any concerns or objections. None of the parties objected at that time.

8

The majority does not dispute that Justice Pemberton participated in oral argument—questioning the parties along with other panel members. Nor does the majority dispute that post-argument deliberations occurred or that a tentative decision was reached in these deliberations. It matters not whether these post-argument communications between panel members are termed "deliberations," or, as the majority now states, "discussions" and "a postponement of deliberation due to the need for more study." *See* slip op., *supra*, at 40-41. What matters is that these communications occurred and that a now-recused justice participated.

There is no way to measure the impact of Justice Pemberton's participation on the remaining panel members. To the extent the majority contends that Justice Pemberton's participation in these post-argument communications was of little or no significance because the entire "'deliberation' . . . lasted less than a minute" and he "did not participate in *any* substantive discussions or deliberations of this case with either of the other panel members," *see id.*, I cannot accept this mistaken characterization or the author's recollection of the facts concerning conference following oral argument. In any event, the majority misses the point. Regardless of its length, the mere fact of Justice Pemberton's participation calls into question the integrity and process of this Court's decision. *See* Tex. Code Jud. Conduct, Canon 2(A) (requiring judges to avoid impropriety as well as appearance of impropriety). The participation of a recused justice in this case cannot be a little bit proper: It is either proper, or it is not.[7]

---

[7] The majority refuses to acknowledge the possibility that Justice Pemberton's participation in this case prior to his recusal might give rise to grounds for recusal for the remaining panel members, including the author of the majority opinion. The majority defines "participation" too narrowly by declaring that "Justice Pemberton did not participate *in the decision* in this case." *See* slip op., *supra*, at 41 (emphasis added). Regardless of whether Justice Pemberton signs the opinion

9

The majority claims that this situation is "directly govern[ed]" by rule 41.1 of the Texas Rules of Appellate Procedure instead of civil rule of procedure 18b(5). *See* slip op., *supra* at 37. While appellate rule 41.1 addresses the procedure to be followed when a member of the panel "cannot participate," *see* Tex. R. App. P. 41.1, that rule does not supplant the procedure expressly contemplated in civil rule of procedure 18b(5). *See* Tex. R. Civ. P. 18b(5).

Notwithstanding the plain language of these rules, the majority concludes that a panel member may simply decline to follow the procedure in civil rule of procedure 18b(5). But this conclusion is at odds with the majority's contention that "the most basic obligation of a judge under the Code of Judicial Conduct . . . is 'to hear and decide matters assigned to the judge.'" If, as the majority posits, the most basic obligation of a judge is to hear and decide matters assigned to that judge, then, under the majority's own conclusion, it follows that a panel member who has participated in oral argument and post-argument deliberations may not simply recuse without affording the parties an opportunity to consider whether to waive the ground for recusal.[8]

---

deciding this case, he participated in the process at least prior to his recusal. The majority's narrowly-defined view should not be used to deny the parties an opportunity to address the effects of Justice Pemberton's involvement in this appeal.

[8] The majority's comparison of this justice's recusals in past appeals to that of Justice Pemberton in this case is inapposite. The relevant issue here is not the mere fact of recusal, but rather a question of timing. The rules of civil and appellate procedure require a judge to inform himself about his personal affairs and financial interests and those of his family and spouse. Tex. R. Civ. P. 18b(3); Tex. R. App. P. 16.2. In keeping with this obligation, I have recused myself at the outset from certain appeals submitted on briefs and prior to submission in cases that have been orally argued. In this case, however, the circumstances are decidedly different. Justice Pemberton did not communicate any ground for recusal until after the parties had spent considerable time and effort briefing the issues in the case and participating in an extended oral argument before the Court.

Due process requires a fair and neutral decisionmaker. *Withrow*, 421 U.S. at 46-47. But the procedures employed to reach a decision in this case raise the question whether this constitutional standard has been met. A now-recused justice participated in oral argument and post-argument deliberations with two of the remaining panel members. This process lacks the transparency fostered by the rules of civil procedure and frustrates the goal of promoting public confidence in the judiciary. Moreover, this approach assumes that we, as judges, know better than the parties before us on a matter relating to a case they bring before the Court. At a minimum—as I have urged all along—we should seek input from the parties as to their desired course of action.

That the majority fails to recognize the legal and ethical dilemma created by a justice's participation in the decision-making process and subsequent recusal after submission of the case does not excuse the procedures employed in this case. What does justice require? In discharging our judicial responsibilities and recognizing the timeless cornerstones of judicial integrity, impartiality, and fairness, judges are called upon to act at all times in a manner that promotes public confidence in the judiciary. *See* Tex. Code Jud. Conduct, Canons 2(A), 3. As one Supreme Court justice has aptly stated, "Judicial integrity is, in consequence, a state interest of the highest order." *See Republican Party of Minn. v. White*, 536 U.S. 765, 793 (2002) (Kennedy, J., concurring). At a minimum, due process requires a fair and neutral decisionmaker—both at trial and on appeal.[9] "An independent and honorable judiciary is indispensable to justice in our society."

---

[9] *See, e.g.*, *Caperton v. A.T. Massey Coal Co.*, 129 S.Ct. 2252, 2256-57 (2009) (finding that due process required recusal of appellate judge); *Withrow v. Larkin*, 421 U.S. 35, 46 (U.S. 1975) ("[A] 'fair trial in a fair tribunal is a basic requirement of due process.'") (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)); *Morrissey v. Brewer*, 408 U.S. 471, 488-89 (1972); *Brown v. Vance*, 637 F.2d 272, 281 (5th Cir. 1981) ("[D]ue process guarantee(s) . . . a fair trial before an

11

Tex. Code of Jud. Conduct, Canon 1. By deciding the merits without disclosing the participation of a now-recused justice and without affording the parties an opportunity to waive or object to any conflict on the part of that judge or the remaining panel members as contemplated in the rules of civil and appellate procedure, the majority undermines the integrity and impartiality of the judiciary. In addition, the opacity and lack of disclosure of this process erodes public confidence in the judiciary and the resolution of this case.

Having sought and obtained oral argument—and having expended substantial time and resources to present their case to a panel of this Court—the parties are entitled to address the Court concerning these issues. The only reason given by Justice Pemberton for his recusal is that a family member might arguably have an indirect financial interest in the outcome of these proceedings. The parties were not informed of the basis for Justice Pemberton's recusal, nor were they given an opportunity to address the potential effects of Justice Pemberton's involvement and post-argument recusal on the remaining panel members. In light of the substantial efforts expended by the parties and the express provision in the rules of civil procedure allowing parties to waive *any* ground for recusal after full disclosure on the record, at a minimum, the parties should have been afforded an opportunity to consider whether to do so before this Court released its opinion.[10]

---

impartial judge . . . .").

[10] The majority mistakenly attributes the delay in the disposition of this case to "a rather lengthy process of producing opinions relating to this 'dissent.'" The eleven-month delay is due to the majority's recalcitrance to seek the parties' input regarding these recusal issues or to allow the parties to immediately reargue the case upon reconstitution of the panel as well as the Court's five-month delay in notifying the parties of Justice Pemberton's recusal and naming his replacement.

12

Because the majority refuses to afford the parties an opportunity to address the procedural shortcomings at issue and an opportunity to waive or object to any potential conflict, I dissent from the majority's opinion purporting to decide the merits of this appeal and from the procedures employed by the majority to reach that decision. Justice requires more than this.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Puryear and Waldrop

Filed: March 26, 2010

13