

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-17-00213-CV

AND

No. 02-18-00017-CV

_____

IN THE INTEREST OF P.K., A CHILD

AND

IN THE INTEREST OF C.K. AND P.K., CHILDREN

On Appeal from the 16th District Court
Denton County, Texas
Trial Court Nos. 2005-10453-16, 2005-10453-16

Before Walker and Pittman, JJ.; Charles Bleil (Senior Justice, Retired, Sitting by Assignment).
Opinion by Justice Pittman

## OPINION

The presiding judge of the Eighth Administrative Judicial Region (presiding administrative judge) denied Appellant Matthew K.'s motion to disqualify Judge Sherry Shipman of the 16th District Court of Denton County (the trial court) in proceedings to modify the parent-child relationship (Modification Proceeding). In one issue, Matthew contends that the denial was error. We affirm.

## BACKGROUND

Araceli K. filed for divorce from Matthew in January 2005 (Divorce Proceeding) in the trial court. She originally alleged discord or conflict of personalities but later amended her petition to allege cruel treatment as the sole ground for divorce. Matthew filed a counterpetition, alleging that the marriage was insupportable because of discord or conflict of personalities. The law firm of Koons, Fuller, Vanden Eykel & Robertson, P.C. represented Araceli in the Divorce Proceeding. The trial court signed a final decree of divorce in 2007, granting the divorce on the ground of insupportability. Neither Judge Shipman nor her then-law firm represented Araceli in the Divorce Proceeding.

In May 2005, while the Divorce Proceeding was ongoing, Araceli's parents, brother, and sister sued Matthew and another person for intentional infliction of emotional distress and sought temporary and permanent injunctions (the Family Members Tort Case). They filed this suit in the 362nd District Court of Denton County. In 2006, Araceli became a plaintiff in the suit by amended petition. Araceli

and her family members were represented in the case by lawyers Jane Thacker and Sam Burke, members of the law firm Wood, Thacker, and Weatherly. At the time, Judge Shipman was an associate at the firm. At one point in that case, then-attorney Shipman signed a subpoena for a trial witness. After a trial, the jury assessed Araceli's damages at $100. The final judgment in that case was signed on November 6, 2006.

In 2014, seven years after the final decree of divorce, Araceli filed a petition to modify the parent-child relationship and to obtain an accounting of custodial property, beginning the Modification Proceeding. The petition was filed in the 16th District Court of Denton County; Judge Shipman had by then become the presiding judge of that court. Matthew filed a counterpetition and a petition for enforcement of orders of the court (Enforcement Proceeding). Araceli filed an amended petition to modify the parent-child relationship and a motion for enforcement of child support.

Matthew filed a motion to disqualify or alternatively to recuse Judge Shipman (Motion to Disqualify) from both the Modification Proceeding and the Enforcement Proceeding. He asserted that Judge Shipman must be disqualified under Texas Constitution article V, section 11 and Texas Rule of Civil Procedure 18b(a)(1) based on her law firm's representation of Araceli in the Family Members Tort Case and her signing of the subpoena request. Judge Shipman declined to recuse herself and forwarded the motion to the presiding administrative judge for resolution. *See* Tex. R. Civ. P. 18a(f)(1)(B). On October 12, 2016, the presiding administrative judge denied Matthew's Motion to Disqualify.

On March 22, 2017, Judge Shipman signed the final order in the Modification Proceeding. About two weeks later, Araceli filed an amended motion for enforcement of child support.

Matthew filed a motion to reconsider the Motion to Disqualify, which the presiding administrative judge denied. The presiding administrative judge's order stated,

> After considering all of the evidence, to include the trial pleadings, I hold that the matters at issue in the *[Family] Members Tort Case* and the *K[.] Divorce Proceedings* are different. Although both actions involve the divorcing spouses and the actions were not legally joined, the claims, defenses, and law were different in each action. The *K[.] Divorce Proceeding* involved property division and the conservatorship of the children. The *[Family] Members Tort Case* involved claims of tortious activity which are unusual and involve unique issues of law.

Matthew now appeals.[1]

## **DISCUSSION**

In one issue, Matthew argues that the presiding administrative judge erred in denying his Motion to Disqualify. He asserts that "[t]he question at issue for purposes of disqualification in this case is whether or not the divorce case and the case alleging intentional infliction of emotional distress were to be considered the same matter in controversy. The pleadings and the evidence show that they were the

---

[1]Matthew originally appealed the denial of disqualification in cause number 02-17-00213-CV. After he filed his notice of appeal, Judge Shipman signed an order in the Enforcement Proceeding. Matthew then filed an appeal from that order in cause number 02-18-00017-CV. On his motion, we have consolidated the two appeals. His sole issue in both appeals is the same.

same." Matthew challenges only the failure to disqualify Judge Shipman. He does not argue that Judge Shipman had to be recused.

## I.    No Attorney May Serve in a Case and Then Preside Over It.

Judges may be removed from particular cases because they are constitutionally disqualified or because they are disqualified or recused under the Texas Rules of Civil Procedure. *In re Union Pac. Res. Co.*, 969 S.W.2d 427, 428 (Tex. 1998). Article V, section 11 of the Texas Constitution states that "[n]o judge shall sit in any case . . . when the judge shall have been counsel in the case." Tex. Const. art. V, § 11. Similarly, under Texas Rule of Civil Procedure 18b(a)(1), a trial judge must disqualify in a proceeding in which "the judge has served as a lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter." Tex. R. Civ. P. 18b(a)(1); *In re O'Connor*, 92 S.W.3d 446, 450 (Tex. 2002) (orig. proceeding). "In summary, a judge is disqualified when two prongs are met: first, the judge or the judge's law firm was the attorney for a party in the case, and second, the matter before the judge is the same matter that was before the judge or judge's law firm." *In re Wilhite*, 298 S.W.3d 754, 758 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (orig. proceeding).

"By its own terms, rule 18b[(a)(1)] is not limited to disqualifying a trial judge only when the 'same lawsuit' is involved. Rather, in plain language, rule 18b[(a)(1)] requires disqualification when the same 'matter in controversy' is involved." *O'Connor*, 92 S.W.3d at 449 (holding the modification proceeding from which the party moved

5

to disqualify the trial judge raised same issues resolved by previous temporary orders—custody, visitation, and the right to determine the child's residence—and was therefore the same matter). However, "Rule 18b[(a)(1)] was not intended to expand disqualification further than constitutionally required." *Tesco Am., Inc. v. Strong Indus., Inc.*, 221 S.W.3d 550, 553 (Tex. 2006); *see also Wilhite*, 298 S.W.3d at 757 ("Rule 18b[(a)(1)]'s reference to the 'same matter in controversy' is synonymous with the Texas Constitution's reference to 'the case.'").

## II.    Judge Shipman Is Not Disqualified.

### A.    The Family Members Tort Case Is Not the Same Case as the Divorce Proceeding.

#### 1.    The Divorce, Modification, and Enforcement Proceedings.

In the Divorce Proceeding, Araceli sought a divorce and a division of community property, sought damages for breach of fiduciary duty regarding her separate estate, asked to be appointed sole managing conservator of the couple's children, requested child support, and asked for an award of attorney's fees.

Originally Araceli listed insupportability as the ground for divorce. By amended petition, she alleged cruelty "in that [Matthew] . . . fraudulently stole[] [her] separate property assets. . . , made numerous false claims regarding [Araceli] and her family members, . . . made disparaging comments regarding [Araceli] to numerous third parties, and . . . [did] numerous other acts of a nature that render[ed] further living together insupportable." Several months before the final judgment in the

6

Family Members Tort Case, she again amended her divorce petition to more briefly allege that Matthew was "guilty of cruel treatment toward [her] of a nature that render[ed] further living together insupportable." Matthew in his counterpetition asked for a divorce, a division of property, and orders for conservatorship and support of the children.

On January 24, 2007, the trial court signed a final decree of divorce in the Divorce Proceeding.

In September 2014, Araceli filed a petition to modify the parent-child relationship and for accounting of custodial property. In her petition, she asked to be awarded the exclusive right to make decisions regarding psychological and psychiatric treatment for the children, for an increase in child support, and for the court to order an accounting of the children's Texas Tomorrow Fund accounts. In his counterpetition, Matthew asked to be appointed as the person who has the right to designate the children's primary residence, for the trial court to order that Araceli's visits with the children be supervised, and for his ongoing child support obligation to be decreased.

Judge Shipman rendered temporary orders regarding child support. By amended counterpetition, Matthew sought to have the exclusive right to consent to the children's "medical, dental, and surgical treatment involving invasive procedures" and to their psychiatric and psychological treatment. Matthew then filed his petition for enforcement of orders of the court, alleging that, in violation of the court's orders,

Araceli made disparaging remarks about him in the presence of others and attempted to take the children out of the country without notifying him of her intent to do so. Araceli filed her own motion for enforcement asserting that Matthew failed to pay child support in accordance with the court's orders. Judge Shipman signed orders on the enforcement motions in October 2017.

## 2. The Family Members Tort Case.

In the Family Members Tort Case, Araceli and her family members sued for damages for Matthew's

- threatening to call Araceli's father's place of employment to make false accusations against him;

- implying that he would "see to it that [Araceli's father] spen[t] years in prison";

- threatening Araceli's mother by "making statements such as 'I'm going to get you'" and "your family is going to drop like flies"; and

- sending a letter to Araceli's brother and her brother's neighbors falsely asserting that her brother was under investigation by CPS for child molestation.

Araceli and her family members further sought a temporary restraining order and temporary injunction enjoining Matthew from causing or threatening to cause bodily injury to any of the family members; threatening the family members; making disparaging remarks about them in the presence of a third party; going near the family members' places of business; or contacting Araceli's father. Araceli's intentional

8

infliction of emotional distress claim was based on observing and being aware of Matthew's conduct rather than on any statements made directly to her.

Matthew filed a counterpetition in which he alleged claims for intentional infliction of emotional distress, defamation, malicious criminal prosecution, assault by offensive physical contact and by threat of bodily injury, and conspiracy. He alleged that Araceli and her family members had made various threats against him and had falsely accused him of sending a derogatory letter about Araceli's brother. In his conspiracy claim, he alleged that Araceli and her family members had conspired to commit the alleged causes of action in order to make him give Araceli a larger share of the couple's community property in the Divorce Proceeding. A third party, William Haynes, joined Matthew's counterpetition and asserted the same causes of action against Araceli and her family members as Matthew had.

### 3. The Family Members Tort Case and the Divorce Proceeding are not the Same Matter in Controversy for Purposes of Disqualification.

As a matter of law, the Family Members Tort Case and the Divorce Proceeding are not the same case or "matter in controversy." Importantly, Matthew does not argue that the matters resolved by the adjudication of Araceli's intentional infliction of emotional distress claim in the Family Members Tort Case have been raised again by the Modification Proceeding or Enforcement Proceeding (and we note that they have not been). *See O'Connor*, 92 S.W.3d at 449 (current proceeding raised again matters resolved by prior proceeding and was therefore the same matter). Rather, the basis of

9

Matthew's argument that the two proceedings are the same is that Araceli alleged cruelty as a ground for divorce and that the elements of cruelty and intentional infliction of emotional distress are the same.

Accepting that Matthew is correct regarding the similarity of the elements of intentional infliction of emotional distress and cruelty as a ground for divorce, the two claims are still not the same "case" for the purposes of disqualification of a trial judge. Yes, in the Divorce Proceeding, Araceli asked for a disproportionate share of their estate for, among other reasons, Matthew's fault in the breakup of the marriage. Yes, Matthew alleged in the Family Members Tort Case that the suit was an attempt to get Araceli a larger share of the couple's property. But the two cases were two separate matters in controversy. The Family Members Tort Case involved additional parties and claims unrelated to the divorce and division of Matthew and Araceli's marital estate: it did not seek a division of community property, child support, or orders regarding the custody of the children. The two actions were tried in separate courts before different judges. In the Family Members Tort Case, Araceli's family members, who were not involved in the Divorce Proceeding, sued Matthew and another party, William Haynes, for claims that were not and could not have been adjudicated in the Divorce Proceeding. *See Brauss v. Triple M Holding GmbH*, 411 S.W.3d 614, 630 (Tex. App.—Dallas 2013, pet. denied) (noting that under Texas Rule of Civil Procedure 60, a party may intervene in a pending lawsuit if the party has a justiciable interest in the pending lawsuit and that the justiciable interest requirement is of paramount

10

importance in the party's right to intervene); *Doe v. Carroll*, No. 03-08-00556-CV, 2009 WL 1811002, at \*5–6 (Tex. App.—Austin June 23, 2009, no pet.) (holding that the trial court did not abuse its discretion in striking the Does' intervention in the Carrolls' divorce because the Does, parents asserting sexual assault and civil assault claims against Mr. Carroll on behalf of their child, did not have a justiciable interest to seek discovery and an equitable division of the Carrolls' assets and because asserting the assault claims in the divorce would have complicated the divorce); 27A Corpus Juris Secundum, Divorce § 175 (stating that as general rule, "divorce actions are for the exclusive use of the parties to the divorce itself," and that "[o]rdinarily . . . third persons should generally not be able to interject themselves into a divorce action to advance their own parochial interests"). Haynes asserted cross-claims against Araceli's family members, claims that were not and could not have been adjudicated in the Divorce Proceeding. The Family Members Tort Case involved different liability theories and defenses. Those claims would have involved evidence not relevant in the Divorce Proceeding (or, for that matter, in the Modification or Enforcement Proceedings), and vice versa. While the Modification, Enforcement, and Divorce Proceedings are all part of "a continuing dispute between the same [petitioner] and same [respondent] over a series of lawsuits concerning the exact same subject, such as custody of the same child," the Family Members Tort Case is not. *See Wilhite*, 298 S.W.3d at 760 (holding that judge was not disqualified because two cases at issue were not the same matter). *Cf. Matlock v. Sanders*, 273 S.W.2d 956, 957–

11

58 (Tex. Civ. App.—Beaumont 1954, no writ) (holding judge was not disqualified even though, as an attorney, he had given an opinion about the validity of title to land in controversy before him, when the current dispute involved different parties).

Matthew argues that Judge Shipman had to disqualify because according to the Texas Supreme Court in *O'Connor*, the prior Divorce Proceeding is the same matter in controversy as the Modification and Enforcement Proceedings before Judge Shipman. *See O'Connor*, 92 S.W.3d at 449 (holding the modification proceeding from which the party moved to disqualify the trial judge raised same issues resolved by previous orders—custody, visitation, and the right to determine the child's residence—and was therefore the same matter as the one resolved by the previous orders). This argument is nonsensical. Because, as a matter of law, the Family Members Tort Case and the Divorce Proceeding are not the same matter in controversy, and the Family Members Tort Case and the Modification and Enforcement Proceedings are not the same matter in controversy, unlike in *O'Connor* it does not matter whether the Divorce Proceeding is the same matter as the Modification and Enforcement Proceedings.

**B. Matthew's Other Arguments In Favor of Disqualification Are Without Merit.**

**1. The Request for Attorney's Fees was not a Judicial Admission that the Family Members Tort Case and the Divorce Proceeding were the Same Matter.**

Matthew points out that in the Divorce Proceeding, Araceli asked to be awarded attorney's fees for the services of her attorney in the Family Members Tort Case. In her third amended divorce petition, Araceli asserted,

> It was further necessary for [Araceli] to secure the services of C. Jane Thacker, a licensed attorney, to defend her against [Matthew's] actions during this divorce. To effect an equitable division of the estate of the parties and as part of the division, and for services rendered in connection with [Matthew's] actions during this divorce, judgment for attorney's fees, expenses and costs through trial and appeal should be granted against [Matthew] and in favor of [Araceli].

Matthew argues that this is a judicial admission that the Family Members Tort Case is the same matter as the Divorce Proceeding. Araceli counters that although she asked for attorney's fees for services her attorney Jane Thacker provided to defend her against Matthew's actions while the Divorce Proceeding was ongoing, that did not constitute an admission that the Family Members Tort Case was the same case as the Divorce Proceeding. Matthew's attorney acknowledged at the disqualification hearing that Thacker's law firm—Judge Shipman's former law firm—did not appear in the Divorce Proceeding.

It is axiomatic that a "'judicial admission must be a clear, deliberate, and unequivocal statement,' and 'occurs when an assertion of fact is conclusively

13

established in live pleadings, making the introduction of other pleadings or evidence unnecessary.'" *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 905 (Tex. 2000) (citation omitted). The paragraph asking for attorney's fees for Thacker's services in the third amended divorce petition does not state what services Thacker provided to protect Araceli from Matthew's actions, though a reasonable inference is that the services related to the intentional infliction of emotional distress claim. However, accepting the inference and reading the paragraph as Araceli asking for her attorney's fees for the Family Members Tort Case to come out of Matthew's share of the marital estate, it does not constitute a judicial admission that the two cases are the same matter. Araceli asserts that the phrase "actions during this divorce" is a temporal phrase, referring to the period in which the Divorce Proceeding was ongoing, not an assertion that Thacker served as Araceli's attorney in the Divorce Proceeding. We agree. This paragraph reads as an argument that in dividing the marital estate, the trial court in the Divorce Proceeding should consider Matthew's actions while the Divorce Proceeding was pending. That is, because of actions Matthew took while the Divorce Proceeding was ongoing, Araceli had to defend herself by securing the services of an attorney (whether to assert the intentional infliction of distress claim or perform other unidentified services), and that as part of the division of the estate, Araceli should be awarded an amount to pay for those services. It is not a clear, deliberate, and unequivocal statement that the Family Members Tort Case and the Divorce Proceeding are the same matter.

14

### 2. Araceli's Joining the Family Members Tort Case Does Not Transform It into the Same Matter as the Divorce Proceeding.

Matthew next argues that Araceli's "decision to join her family in their case against [him] in the weeks before trial w[as] calculated to give her another opportunity in a different court to obtain additional monetary damages from [him] for the same conduct alleged in the divorce." Matthew may be correct, although we can only speculate as to Araceli's motive.[2] However, whatever Araceli's purpose was in joining the Family Members Tort Case, it cannot turn two separate cases into one case, and Matthew cites no authority for the proposition that it does. *See* Tex. R. App. P. 38.1(i).

### 3. Attorney Arguments in the Family Members Tort Case Did Not Demonstrate That It Was the Same Matter as the Divorce Proceeding.

Matthew also contends that attorney statements in the Family Members Tort Case demonstrated that the two cases were the same for the purposes of disqualification. First, he describes Araceli's attorney's opening statement in the Family Members Tort Case and argues that according to the attorney's opening statement, the divorce provided the overall context in which the tort case was brought. He contends that "[t]he character and the same alleged conduct of Matthew

---

[2]If that was indeed Araceli's plan, Matthew had the option of raising res judicata in the Divorce Proceeding against any attempt by Araceli to achieve a double recovery in the property division. *See Twyman v. Twyman*, 855 S.W.2d 619, 625 (Tex. 1993).

K. was at issue in both cases. In other words, any evidence arising out of the [Family Members Tort Case] would be relevant in the divorce case."

Matthew does not tell us what evidence, if any, was relevant to or was used in both proceedings. Certainly, *some* of the evidence used in or arising from the Family Members Tort Case would have been relevant in the Divorce Proceeding, given that the plaintiffs in the Family Members Tort Case complained of Matthew's actions in the time period shortly before and during the Divorce Proceeding, and his actions during that time were also relevant to matters in the Divorce Proceeding. But that does not make the two proceedings the same matter. *See Wilhite*, 298 S.W.3d at 760.

Matthew then points to closing arguments in the Family Members Tort Case. Matthew notes that in his closing arguments, attorney Sam Burke, Thacker's co-counsel in that case, mentioned a letter that one of Matthew's witnesses in that case had sent to the judge in the Divorce Proceeding, Judge Shipman's predecessor. Burke stated in his closing argument, "Mr. Padilla [the witness] writes to Judge Worley in the divorce case for reasons I can't—I can't understand why he'd think he'd need to be in that case." Matthew contends that this statement "highlights a direct connection between the cases" and shows that "the cases were intertwined. The letter clearly demonstrates that [the witness] did not distinguish his role as a witness in the divorce case from that in the tort case." What the witness's purpose was in writing to the judge in the Divorce Proceeding is a matter on which we have no evidence and will

not speculate. It does not affect whether the Family Members Tort Case is the same matter as the Divorce Proceeding for the purposes of disqualification.

### 4. The Juror's Affidavit from the Family Members Tort Case Does Not Convert That Case into the Divorce Proceeding.

In a somewhat misguided contention, Matthew argues that an affidavit from a juror in the Family Members Tort Case, which Matthew attached to his motion for new trial in that case, shows that the Family Members Tort Case and the Divorce Proceeding are the same matter. In the affidavit, the juror stated that the jury took too seriously the Araceli's family members statements that Matthew "had lost collateral decisions in a divorce matter unrelated to the matter at hand" and "confused the issues as being relevant." Matthew argues that this juror's affidavit "clearly shows that actions in the divorce case were the subject of deliberation by the jury in the tort case." Matthew does not explain what "collateral decisions" the jury considered or what issues the jury confused "as being relevant" and neither did the juror's affidavit.

As noted above, the actions of Matthew that were the subject of the Family Members Tort Case occurred while the dissolution of the marriage was ongoing. That is, the divorce was the context for Matthew's actions. Accordingly, it is not surprising that the jury heard about the fact of the ongoing Divorce Proceeding. Any juror confusion about the relevance of an unidentified issue from the Divorce Proceeding to the tort claims does not establish that these two separate cases were the same case.

17

**5.    The Mere Knowledge of Facts in the Divorce Proceeding Does Not Make It and the Family Members Tort Case the Same Matter.**

Matthew points out that in the Family Members Tort Case, Araceli's attorney filed a motion for enforcement of a temporary injunction against him and that the basis of the motion was his making derogatory remarks in front of the children. Matthew argues that to prepare the motion, Thacker had to have "specific knowledge of the divorce and any child visitation provisions, including those which prohibit parties from making disparaging remarks about the other in the presence of the children." He points out that in support of the motion for enforcement, Thacker provided the affidavit of Lavonda Tinkle, the same trial witness whose subpoena Judge Shipman signed when she was an associate at the firm. He argues that from Thacker's and Burke's opening and closing statements and Thacker's motion to enforce, "they were thoroughly knowledgeable with the facts relevant to the divorce." And, Matthew argues, "[a]ny conduct or motives otherwise deemed harmful or injurious in the tort case would be clearly relevant in the divorce case because the pleadings in both cases complain of the same conduct of Matthew."

First, we disagree with Matthew's contention that Thacker had to have knowledge of the child visitation provisions in the Divorce Proceeding to prepare the motion to enforce in the Family Members Tort Case because that motion asked the trial court to enforce the injunction issued by *that* court.

18

Second, the pleadings in both cases do not necessarily complain of the same conduct by Matthew. The pleadings in the Family Members Tort Case detail what conduct the family members complain of. On the other hand, the pleadings from the Divorce Proceeding that Matthew relies on are less specific (and were subsequently amended to be even less specific), alleging that he "made numerous false claims regarding [Araceli] and her family members" and did "numerous other acts of a nature that renders further living together insupportable." Matthew agreed that the petition was too vague; he filed special exceptions complaining that the paragraph "broadly states acts or actions of [Matthew] but provides no information as to what acts or actions [Araceli] is complaining about." We may infer that that these allegations included at least some of the same acts alleged in the Family Members Tort Case, but it is only that—an inference.

More importantly, although Judge Shipman's imputed knowledge of some facts at issue in the Family Members Tort Case that may have also been alleged in the Divorce Proceeding could be relevant in a motion to recuse,[3] it is not grounds for

---

[3]In this case, though, no evidence showed that Judge Shipman worked on the Family Members Tort Case other than signing the subpoena or has personal knowledge of disputed evidentiary facts concerning the Divorce, Modification, or Enforcement Proceedings, and Matthew does not argue on appeal that the presiding administrative judge abused his discretion by denying the motion to recuse. *See* Tex. R. Civ. P. 18b(b)(3) (requiring recusal of a judge who has personal knowledge of disputed evidentiary facts concerning the proceeding); *Union Pac.*, 969 S.W.2d at 428 (holding erroneous denial of a recusal motion may be waived). Nor does Matthew specify what facts were disputed evidentiary facts in both the Family Members Tort Case and the Divorce Proceeding.

19

disqualification. *Compare* Tex. R. Civ. P. 18b(a) (listing grounds for disqualification), *with* Tex. R. Civ. P. 18b(b) (listing grounds for recusal, including for a judge's personal knowledge of disputed evidentiary facts in the proceeding). *See also Tesco Am.*, 221 S.W.3d at 553 (noting that under the Texas Constitution and Rule 18b(a), the *only* grounds for disqualification are the judge's (1) having an interest in the case; (2) being related to one of the parties; and (3) having served as counsel, or practicing with an attorney who served as counsel, in the same matter in controversy). That Araceli's attorney in the Family Members Tort Case had knowledge of some of the facts relevant to the Divorce Proceeding would be unsurprising, given that the events on which the Family Members Tort Case was based occurred in the months leading up to the filing of the divorce petition and directly after the filing. While that knowledge may be imputed to Judge Shipman by virtue of her working at the same firm, *see Nat'l Med. Enters., Inc. v. Godbey*, 924 S.W.2d 123, 131 (Tex. 1996) (noting that an attorney's knowledge is imputed by law to every other attorney in the firm), that knowledge does not require her disqualification.[4] Simply stated, the issue here is whether the Divorce

_____

[4]The Texas Supreme Court has pointed out that the potential for misuse of confidential information obtained from representation of a client *in the same matter* is the consideration behind disqualification, stating in *Tesco American* that like with imputing knowledge among attorneys at a firm for purposes of disqualifying an attorney from representation, "[t]he same considerations apply [to the disqualification of an appellate judge]—proving misuse would be just as difficult, and damage to the profession just as extensive, if lawyers who become appellate judges might take confidential information with them for future use." *Tesco Am.*, 221 S.W.3d at 554. The Texas Supreme Court has not held, and neither the constitution nor the rules of civil procedure provide, that a judge must be disqualified merely for having knowledge

20

Proceeding is the same matter as the Family Members Tort Case. Her possible knowledge of some unidentified facts that may have been relevant in the Divorce Proceeding does not make the Family Members Tort Case and the Divorce Proceeding the same matter. *See Torres v. State*, 424 S.W.3d 245, 262 n.6 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (stating that a judge's relying on personal knowledge of the evidence and proceedings in a case is a ground for recusal but not for disqualification); *Kuykendall v. State*, 335 S.W.3d 429, 433 (Tex. App.—Beaumont 2011, pet. ref'd) (holding judge was not disqualified from presiding over criminal trial for possession of a controlled substance despite the judge's having represented the defendant in a DUI case that was used to enhance the punishment in the possession case); *Wilhite*, 298 S.W.3d at 759 (holding that judge not disqualified from presiding over a case despite his law firm's representation of the same defendant in another lawsuit with different plaintiffs, despite plaintiffs' intention to use evidence from the prior case and assertion of a similar liability theory—asbestos exposure at a plant during the same time period at issue in the prior case); *Pan Am. Petroleum Corp. v. Mitchell*, 338 S.W.2d 740, 741 (Tex. Civ. App.—El Paso 1960, no writ) (holding judge not disqualified from presiding over a case despite stating that the appellee had told him all about the case); *Lombardino v. Firemen's & Policemen's Civil Serv. Comm'n of San Antonio*, 310 S.W.2d 651, 654 (Tex. Civ. App.—San Antonio 1958, writ ref'd n.r.e.)

---

about facts that may be relevant to a matter when the party was not represented in that matter by either the judge or a lawyer with whom the judge previously practiced.

("[I]t is settled by many decisions that a judge is not incompetent to try a case . . . because he has personal knowledge of the facts of the case.").

We overrule Matthew's sole issue.

## CONCLUSION

Having overruled Matthew's issue, we affirm the presiding administrative judge's denial of the Motion to Disqualify and the trial court's final judgments in the Modification and Enforcement Proceedings.

/s/ Mark T. Pittman
Mark T. Pittman
Justice

Delivered: September 13, 2018

22